# Morrow, Appellant, *v.* Highland Grove Traction Company.

*Deed—Plan of lots—Square—Park—Grove—Dedication.*

A sale of lots according to a plan on which an open square is shown marked "Alliquippa Grove" colored in green, with serpentine paths through it, and an announcement to purchasers that the "grove" had been set apart as a public park, are sufficient to establish a dedication of the grove to public use as a public park. The fact that the word "grove" was used instead of the words "park" or "square" is immaterial. In such a case the lot owners have a standing to enjoin the use of the grove for any other than a public purpose, and they cannot be charged with laches because for a brief time they permitted it to be used for private purposes.

Argued Nov. 12, 1907. Appeal, No. 164, Oct. T., 1907, by plaintiffs, from decree of C. P. No. 1, Allegheny Co., March Term, 1906, No. 356, dismissing bill in equity in case of George B. Morrow et al. v. Highland Grove Traction Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for an injunction. Before BROWN, J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* with him *I. L. Jones,* for appellants.—The plaintiffs show a complete and legal dedication of the land in controversy in this case, for public purposes : Ferguson's App., 117 Pa. 426 ; McCall v. Davis, 56 Pa. 431 ; In re Opening of Pearl St., 111 Pa. 565; Com. v. Rush, 14 Pa. 186 ; Pittsburg v. Epping Carpenter Co., 194 Pa. 318 ; McKee v. Perchment, 69 Pa. 342 ; Trutt v. Spotts, 87 Pa. 339 ; Transue v. Sell, 105 Pa. 604 ; Parker v. Smith, 17 Mass. 413.

A recorded plan may be conclusive evidence of an intention to dedicate, although there may be no formal words of dedication : Birmingham v. Anderson, 48 Pa. 253 ; Schenley

v. Pittsburg, 104 Pa. 472 ; Hanson v. Eastman, 21 Minn. 509 ; Yates v. Judd, 18 Wis. 118.

The word " park " written upon a block upon a map of city property indicates a public use ; and conveyances made by the owners of the platted land, by reference to such map, may operate conclusively as a dedication of the block : Price v. Inhabitants of Plainfield, 40 N. J. L. 608 ; Maywood Co. v. Maywood, 118 Ill. 61 (6 N. E. Repr. 866) ; Doe v. Town of Attica, 7 Ind. 641.

The rights of the public cannot be affected by a nonuser : Com. v. Moorehead, 118 Pa. 344 ; Com. v. McNaugher, 131 Pa. 55 ; Rowan v. Town of Portland, 8 B. Monroe, 232 ; Burbank v. Fay, 65 N. Y. 57; New Orleans v. U. S., 35 U. S. 662 ; Webb v. City of Demopolis, 95 Ala. 116 (13 So. Repr. 289) ; Witman v. Smeltzer, 16 Pa. Superior Ct. 285 ; Ermentrout v. Stitzel, 170 Pa. 540.

*T. C. Noble,* for appellee.—There was no sufficient dedication : Com. v. Royce, 152 Pa. 88 ; Seminary v. Washington Borough, 18 Pa. Superior Ct. 555 ; Gilkeson v. Thompson, 210 Pa. 355 ; Pittsburg Melting Co., Ltd., v. Reese, 118 Pa. 355 ; Stewart v. Huntindon Bank, 11 S. & R. 267 ; Johnston v. Elizabeth B. & L. Assn., 104 Pa. 394.

No action lies for a public nuisance unless there be special damage to the plaintiff : Rhymer v. Fretz, 206 Pa. 230 ; Com. v. McDonald, 16 S. & R. 390 ; Com. v. Rush, 14 Pa. 186 ; Com. v. Alburger, 1 Wharton, 469 ; Com. v. Bowman, 3 Pa. 202 ; McCall v. Davis, 56 Pa. 431 ; Trutt v. Spotts, 87 Pa. 339 ; Transue v. Sell, 105 Pa. 604.

Plaintiffs are guilty of laches : Lindeman v. Lindsey, 69 Pa. 93 ; Coward v. Llewellyn, 209 Pa. 582 ; Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62 ; Hinnershitz v. United Traction Co., 206 Pa. 91 ; Heilman v. Lebanon Ry. Co., 175 Pa. 188 ; s. c., 180 Pa. 627 ; Messner v. Ry. Co., 13 Pa. Superior Ct. 429 ; Galliher v. Cadwell, 145 U. S. 368 (12 Sup. Ct. Repr. 873) ; Neely's Appeal, 85 Pa. 38.

OPINION BY MR. JUSTICE POTTER, January 6, 1908 :

It appears from the history of this case, that the plaintiffs are the owners of certain lots of ground, in the Highland

Grove Plan of lots in the eighth ward of the city of McKeesport. That they, or some of them at least, purchased lots from former owners of the ground by whom it had been laid out in a plan of several hundred building lots, and the plan of lots placed on record on August 9, 1873, in the recorder's office of Allegheny county. On said plan is an open square marked "Alliquippa Grove," colored in green, with serpentine paths through it. In April, 1889, more than fifteen years after the plan was laid out and placed on record, and after a large number of lots had been sold, the remaining portion of the plan became vested in the Highland Land Company, Limited, and that concern, in March, 1893, proceeded to revise the plan, and changed the representation of the open square marked "Alliquippa Grove" to four large spaces shown as H, I, J and K, and changed also the arrangement of the lots, making certain rows to front on the open space, and laying out additional streets marked "Park Way" at each end of the open space.

The defendant, which is a street railway company, built in June, 1901, a car barn, sand shed and tracks upon portions of what had been, under the revised plan J and K, and which was originally part of the space known and marked as "Alliquippa Grove." The plaintiffs who had purchased lots at various times in both plans, filed this bill to enjoin the defendant company from interfering with the public use of said open square, and to obtain the removal of the obstructions placed thereon. The court below dismissed the bill upon the ground that there was not sufficient evidence of a dedication to public use, and because of laches on the part of plaintiffs. It appears from the testimony, that when the lots were sold it was represented that the ground marked "Alliquippa Grove" was set apart as a public park. It was so announced by the auctioneer at a public sale of the lots, and was so stated to various purchasers who bought at private sale, both before and after the title had been conveyed to the Highland Land Company. The management of the land company also, at one time, put a wire fence around the square to indicate it was a park, with stile openings at each corner of the square, and placed benches in it. The testimony was conflicting as to the extent of the use made of the ground by the public, but it was

shown that it was frequently used for Sunday school, and other picnics, and also at times for religious meetings.

An inspection of the plan according to which the original sales of lots were made, clearly indicates to us that the ground marked " Alliquippa Grove " was intended to be a public square. The other ground in the plan is divided into numbered lots, while this is not. Nor are the streets plotted as running through it, but instead, winding and curving walks lead to the streets, and the intervening spaces are colored green. The only fair inference which could be drawn by any intending purchaser who looked at this plan, would be that these winding walks, and colored spaces, were intended to indicate an open park, or breathing place, to be preserved for the use of purchasers of lots, and the public generally. " Where the owner of real property lays out a town upon it, and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, . . . he thereby dedicates the streets and alleys to the use of the public. . . . On the same principle, the owner will be held to have dedicated to the public use such pieces of land as are marked on the plat or map as squares, courts or parks. . . . Nor is the irrevocable character of the dedication affected by the fact that the property is not at once subjected to the uses designed : " 13 Cyc. L. & Pr. 458.

We do not attach any significance to the fact that the word " grove " is used on the plan, rather than the word " park." The intention of the owners to dedicate a breathing space, when they prepared and recorded the plan, is manifest. It is common knowledge that a grove is the nucleus of a park or pleasure ground for the people. The Century Dictionary defines a grove as " a group of trees of indefinite extent, but not large enough to constitute a forest ; especially such a a group considered as furnishing shade for avenues and walks." And the Standard Dictionary defines a park as " an open square or plaza, usually containing shade trees and seats." In speaking of a park, the present chief justice said, in Laird v. Pittsburg, 205 Pa. 1 (p. 5) : " No doubt the idea of open air and space with the land kept in grass and trees, as if approximately in the state of nature, still inheres in the general understanding of the word, but it is no longer the dominat-

ing thought as it formerly was. . . . The trimming away of thickets and underbrush, the substitution of regular pathways paved and perhaps railed and artificially lighted, which would have been incongruous to our forefathers, now enter into the accepted idea of a park." A natural grove, set apart and cared for as above indicated, becomes quickly, what to the common understanding is a park, which in a definition adopted by this court in Com. v. Hazen, 207 Pa. 52, is "a piece of ground set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open air recreation." It is not necessary that the word "park" or public square be stamped upon a plan of lots, in order to operate as a grant to the public. If the intention to dedicate to public use can be clearly discerned, whether from words to that effect, or from symbols, or from the position and relation of the open spaces upon the map or plan, it is sufficient, "When, from the position and relations of any open space in the town, it is apparent that it was intended to be public property, or for the public use, the dedication of such space to the public, is as perfect as if the name or purpose were indicated by the written word; and, after the sale of lots, made under such dedication, it can neither be revoked nor limited in its extent, on the ground of a supposed excess of the dedication, beyond the requirements of the public. The proprietor will have lost all power over the subject, and the only power of the court, is to ascertain and establish the fact and extent of the dedication:" Rowan's Ex'rs v. Portland, 8 B. Mon. (Ky.) 232.

And in the case of Pittsburg v. Epping-Carpenter Co., 194 Pa. 318, the trial judge said, in an opinion adopted by this court (p. 328): " Property may be dedicated for public use by plans indicating that purpose. Such dedication becomes irrevocable when the interest of third persons is acquired by sale of lots or acceptance for the public by public use or municipal action. Acceptance by the public need not be immediate, but may be made when public necessity or convenience arises. As a corollary to this proposition it follows that it is not necessary that the public use the entire property dedicated. Any public use of part of the property, indicating a purpose to accept the gift, fixes the public right to the whole. When the

public right has been acquired it cannot be lost by nonuser or by municipal action not expressly authorized by law. Any occupation of the property inconsistent with the public right is a nuisance, and no length of time will legalize a public nuisance."

The authorities seem to be uniform to the effect that the same principles apply to the dedication of public streets, and public squares or parks. In either case, the purpose may be gathered from the designation or marks given by the owner to the land, upon the map or plan. In Com. v. Connellsville Borough, 201 Pa. 154, we held that the words " public square" or " public ground," when used upon a plat of ground, established an unrestricted dedication to public use.

In the present case, the second or revised plan of lots adopted and recorded by the Highland Land Company, Limited, in 1894, is no less indicative of an intention to preserve the ground in question as a public square. The plan is not so ornamental, but the space is preserved and the arrangement of the adjoining lots is changed so as to front them upon it, and cross streets on each end are opened, and designated as " Park Ways." Surely, anyone buying lots under this plan would have the right to rely upon the intention plainly manifested to treat this ground as a public square. The very least that can be said of the recorded plans is that they were sufficient to put any intending purchaser upon notice that the ground in question had been dedicated to public use, and the testimony abundantly establishes the fact that any inquiry of the lot holders, such as complainants and others, would have shown that they purchased upon the faith of representations made to them at the time that the ground designated upon the plan as " Alliquippa Grove" was to be preserved as a public park. The testimony is ample to sustain the claim that the owners of the ground, from the time the plan of lots was laid out, down to 1903, always considered this ground in question as public ground. We see nothing in the permissive use of part of the ground for a few years by the German Turnverein which militates against this use. The right to give them any exclusive control, even for the purposes of public entertainment, was questionable, but such use was temporary and has long since been surrendered.

It is also contended that the complainants here cannot maintain their bill because the right to the use of the park is in the public, and, further, because they have been guilty of laches. But the principle contended for here by the appellee, in both of these respects, was considered and decided adversely to the claim now made by it, in the late case of Garvey v. Refractories Co., 213 Pa. 177, where, in an ample opinion by our Brother MESTREZAT, the right of an individual lot holder in a plan of lots to prevent the obstruction of a street is fully maintained. It is there also clearly pointed out that in such cases the law does not afford an adequate remedy, and the lot owner is entitled to a remedy in equity that will restore him to the enjoyment of his rights. It has long been settled that obstructions upon public highways or public ground are nuisances, and are of the class of cases in which the equitable remedy by injunction may be sought: Hacke's Appeal, 101 Pa. 245. In the present case we are unable to agree with the conclusion reached by the court below. We think the evidence from the face of the plans, and the declarations and continuous conduct of the owners of the ground in their dealings with purchasers of lots, all point unmistakably to the fact of dedication of the ground known and marked as "Alliquippa Grove" to public use, as an open square or park. We can see no justification whatever for the attempt on the part of the defendant company to seize and appropriate to its own use this property which belongs to the public.

The plaintiffs were entitled to the relief prayed for in the bill, and the defendant company should be required to remove its car barn, tracks and other property from the public ground.

The decree of the court below dismissing the plaintiffs' bill is reversed and the bill is reinstated, and it is ordered that the record be remitted to the court below for further proceedings in accordance with this opinion.