# Baltimore & Ohio R. R. et al., Appellants, v. Wilson Snyder Mfg. Co. et al.

*Deeds—Plan of lots—Streets—Dedication—Filing plan—Notice —Constructive notice—Change of plan.*

1. A private owner, who lays out a plan of lots with plotted streets and alleys, may change or alter his plan, or may abrogate it altogether, if he does so before the rights of the public or of individual purchasers of lots become vested.

2. Where an owner lays out a plan of lots showing a street, and the plan is not recorded although filed in the bureau of surveys of a city and subsequently, and after having recalled deeds for two lots, the owner, in order to defend the rights of himself and future purchasers and the public, executes a deed of "dedication of streets," in which he refers to the plan, but excludes the street in question, and this is recorded, subsequent purchasers of lots by deeds reciting the plan are bound to take notice of the plan and of the recorded "dedication of streets," and can claim no interest in the excluded street.

3. The document designated "dedication of streets" was within the purview of the Act of March 18, 1775, 1 Sm. L. 424, and as such furnished constructive notice of its contents to the proposed purchasers of lots.

4. If, in such case, any rights were acquired by the public or by the lot owners through the use of the street as a public highway, such rights were terminated by proceedings in the quarter sessions to vacate the street in question many years after the dedication and sale of lots; but any rights acquired by purchasers through their deeds were not so terminated.

Argued October 19, 1923.   Appeal, No. 126, Oct. T., 1923, by plaintiffs, from decree of C. P. Allegheny Co., April T., 1912, No. 2652, dismissing bill in equity, in case of Baltimore & Ohio Railroad Co. et al. v. Wilson Snyder Mfg. Co., and Denny Brereton et al., surviving Trustees under will of Mary E. Schenley, deceased, and John Moerlein et al., and Bovaird v. Seyfang Mfg. Co.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Bill in equity to restrain closing of First Avenue, formerly Front Street, between Ross Street and Try Street in the City of Pittsburgh.   Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

The following plan shows the location of the land in dispute:

Bill dismissed.  Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Watson B. Adair,* with him *Gordon & Smith,* for appellants.—The conveyances made by James O'Hara of lots in his plan to plaintiffs' predecessors in title car-

ried with them the legal right to use the whole of Front Street, now First Avenue, as shown in the plan, whether or not the deed of dedication referred to this plan: O'Donnell v. Pittsburgh, 234 Pa. 401; Garvey v. Refractories Co., 213 Pa. 177; Peoples Nat. Bank v. Liquid Carbonic Co., 226 Pa. 503; O'Donnell v. Porter Co., 238 Pa. 495; Jessop v. Boro., 225 Pa. 583; Southwestern State Normal Schools Case, 213 Pa. 244; Woodward v. Pittsburgh, 194 Pa. 193; Ferguson's App., 117 Pa. 426; Chambersburg Shoe Mfg. Co. v. R. R., 240 Pa. 519.

*Ernest C. Irwin,* with him *Patterson, Crawford, Miller & Arensberg* and *Watson & Freeman,* for appellees.— Front Street, from Ross to Try, was never dedicated to the public or to purchasers of lots in the O'Hara plan: Griffin's App., 109 Pa. 150; Mountville Boro. v. Gable, 73 Pa. Superior Ct. 189; Waters v. Phila., 208 Pa. 189.

There is no merit to the objection that the deed of dedication was not properly recorded: Shortz v. Unangst, 3 W. & S. 45; Brotherton v. Livingston, 3 W. & S. 334; Hellman v. Hellman, 4 Rawle 440.

Aside from the deed of dedication, there is evidence in the case to sustain a finding that all the streets of O'Hara's plan, which were, in fact, dedicated, became public streets before any lots were sold, thus negativing all right of private easement therein: Bell v. Steel Co., 243 Pa. 83.

OPINION BY MR. JUSTICE SADLER, January 7, 1924:

In 1809, James O'Hara was the owner of certain land, now a part of Pittsburgh, and this he plotted into lots, which were designated by numbers on a plan showing their respective locations, and having marked thereon certain open spaces for use as streets and avenues. This paper was never recorded, though a copy was filed in the city's bureau of surveys and the recorder's office of Allegheny County about 1830. On it are marked as highways Ross and Try Streets, and certain cross road-

ways, extensions of those of the city then existing, including Front, now called First, which latter appears on the draft as open at right-angles between the two first named, and it is this strip of land which is now in controversy. Complainants seek by the present proceeding to prevent its obstruction.

From this plot, to which reference is made in all subsequent conveyances, two lots were sold in 1811 to one Wendt, but, in the following year, all privileges acquired thereby were surrendered, a new deed being given to him in which the parties agreed that the first "indenture and record thereof shall be void and of no effect." In the meantime, O'Hara, desiring to fix the respective rights of himself and the expected purchasers, and the public, in the land plotted, executed, his wife joining, a deed of "dedication of streets," which was duly recorded, and in which reference is made to the plan already prepared. Therein he expressly set forth which highways were for use of the lot owners, and in his description fixed the terminus of First Avenue at Ross Street, not extending it over the locus in quo to Try. At that time no one was interested in this plan, except Wendt, the purchaser of the two lots, who, as noted, surrendered any claim arising therefrom by his subsequent stipulation.

By the street dedication, O'Hara granted and conveyed to those who should become owners of lots the right to use the highways specifically named. It also provided that the same "should remain open forever for the public benefit, and to be repaired and maintained at public expense, as other streets and highways within the Borough of Pittsburgh." Years later, work was done by the city on the disputed portion of First Street between Ross and Try, but any privilege therein which may have been secured to the landowners by reason of the city's acceptance, if such there was, terminated in 1881, with the approval by the quarter sessions court of a proceeding by which the part in question was vacated.

All of the parties to the present litigation claim through deeds made by O'Hara, or his executors, and all refer to his plan, but there is no specific mention of the recorded "dedication of streets," except in one conveyance made by the latter. The lots owned by complainants came through purchases made in 1812 and 1814, and none acquired by them abuts on the strip here involved. The lots of defendants do, and they, or their predecessors in title, have for many years made use of the open space in the carrying on of their respective manufacturing enterprises, though, until the filing of this bill, the encroachments thereon were not of a permanent character, except in one instance. Likewise, the public used the way, from time to time, in hauling materials to and fro,—certainly prior to the vacation proceedings in 1881. It may be noted that Try Street, below Second, was not included in the formal dedication of O'Hara. A part of it was purchased and occupied by the Pennsylvania Canal Company, and, later, by the Pennsylvania Railroad, which constructed its tracks, with a bridge or trestle, on the ground where First Street, if extended, would intersect. The opening thereunder became so filled with earth and rubbish as to make vehicular traffic impossible, though there may have been some prior to 1881.

The present bill was filed in 1912,—though the hearing was not had until 1922,—to prevent the continuance of obstructions on the land in question, and enjoin the defendants from in any way closing or interfering with free passage over it. Findings of fact were made by the learned court below, the essential features of which have been briefly set forth above. The injunction prayed for was refused, and this appeal is from the decree entered.

If the plaintiffs have standing to complain here, it must rest on a property right acquired as the purchaser of lots on the O'Hara plan, referred to in the deeds of conveyance. Attention has been called to the fact that

this apparently left open an extension of First Street to Try, and, if there was a dedication of this land, then the court could properly grant the relief prayed for on the demand of any lot owner, whether abutting or not: Garvey v. Refractories Co., 213 Pa. 177. There can be no question of the rights acquired by purchase, where the deed refers to a plan upon which streets are laid out. The public may, with the lot owners, use them (Quicksall v. Phila., 177 Pa. 301), for highway purposes: Ormsby Land Co. v. Pittsburgh, 276 Pa. 68. But the nonuser by the public does not affect the privilege secured by the individual (O'Donnell v. Pittsburgh, 234 Pa. 401), and the vacation of the streets, so far as the municipality is concerned, after being devoted to such purpose, does not deprive him of the property right acquired (Chambersburg S. Mfg. Co. v. C. V. R. R. Co., 240 Pa. 519; O'Donnell v. Porter Co., 238 Pa. 495), unless the highways were taken over by public authority prior to the sale from the plan: Bell v. The Pittsburgh Steel Co., 243 Pa. 83. We cannot say this condition here appeared, though the possibility of its having taken place is suggested by the court below. All rights which plaintiffs secured, by reason of the adoption of the land as a city street, were cancelled by the vacation proceeding. Those obtained by the purchaser, through the deed referring to the plan, remain unaffected, for, if there was a dedication, the right to use the highway in question was appurtenant to the conveyance of each and every lot thus sold: Stivason v. Serene, 80 Pa. Superior Ct. 1.

It is therefore necessary to determine the effect of the grants made by O'Hara, all of which refer to the unrecorded plan, as does the "dedication of streets." There is no evidence that more than one existed, and the suggestion that the plot, showing the extension of First Street, may have been made subsequent to the definition of the highways as filed, lacks support. Notice should be taken of the effort made by O'Hara to prevent misunderstanding by plainly indicating his purpose, and the recall

of the only deed executed, which, to the time of his written declaration, could have conferred more extensive rights than set forth in the latter. The land was his, and he could dedicate it all or in part, either for public or private use. "A private owner, who lays out a plan of lots with plotted streets and alleys, may change or alter his plan, or may abrogate it altogether, if he does so before the rights of the public or of individual purchasers of lots become vested": Bell v. The Pittsburgh Steel Co., 243 Pa. 83, 88. When the deeds were made,—all subsequent to the formal fixing of the street lines,—the purpose of the grantor had been made clear. It is the intention disclosed which must control,—a fact, in this form of proceeding, to be disposed of by the finding of the chancellor (Mountville v. Gable, 73 Pa. Superior Ct. 189),—and, here, the conclusion, based on ample evidence, is adverse to the claimants.

All of the deeds mention the plan, and convey by lot numbers. This necessitated an inquiry as to the property meant, and compelled the purchaser to investigate the plan, or be bound by what it would have disclosed on examination, though it was not a matter of record: McKee v. Perchment, 69 Pa. 342: Garvey v. Refractories Co., supra. O'Hara did file his grant to the public and lot owners, whereby he located the highways in which rights were to pass, and this writing, concerning land, was properly entered of record under the Act of 1775 (March 18, 1875, 1 Sm. L. 424). The document was within the purview of the statute (Shortz v. Unangst, 3 W. & S. 45; Coleman v. Reynolds, 181 Pa. 317; S. & W. V. R. R. & C. Co. v. Quick, 61 Pa. 328); and, as such, furnished constructive notice of its contents to the proposed purchasers of the land, as do recorded articles of agreement indicating the rights in property (Rhines v. Baird, 41 Pa. 256), or recitals in the line of title: Hancock v. McAvoy, 151 Pa. 439. An inspection, by the grantee, of the conveyances of O'Hara would have shown the extent of his dedication (Wickham v. Twad-

dell, 25 Pa. Superior Ct. 188), and such inquiry he was bound to make for his protection (Ohio R. Junc. R. R. Co. v. Penna. Co., 222 Pa. 573), though the restriction in question appeared in a separately recorded instrument: Boyden v. Roberts, 131 Wis. 659, 111 N. W. 701. Complainants cannot now successfully contend that they were misled by the plan, when in law they had notice of the limitations imposed by the owner.

In view of the conclusion reached, a discussion of other matters suggested, and not affecting the result, would be useless. The assignments of error are overruled.

The decree is affirmed at the cost of appellants.