374 A.2d 665

**Bertha REED and Geraldine Huntsberger, Appellants,**

**v.**

**Dale L. REESE et al.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1975.

Decided Oct. 8, 1976.

Reargument Denied July 8, 1977.

William R. Mark, Shippensburg, for appellants.

Tom H. Bietsch, Carlisle, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

This is an appeal by Bertha Reed and Geraldine Huntsberger (hereinafter Reed) from a final decree in equity. The facts found by the chancellor and affirmed by the court en banc are as follows:

In October of 1956, West End Land Company (hereinafter Company) prepared a plot plan, "Spring House Subdivision Plan," for a parcel of land it owned in the Borough of Shippensburg, Cumberland County. This plan (hereinafter 1956 Plan) was not recorded until January 13, 1969, and then recordation was without acknowledgement and without approval by the Planning Commission or the Borough Council of Shippensburg as required by ordinance.

The 1956 Plan divided the parcel of land into six Blocks, A through F. Block C is divided into fourteen lots, a "park area," and two walkways leading from streets to the park area.

On July 12, 1962, Company conveyed a lot in Block C to Reed. The deed was recorded July 25, 1962 and described the lot conveyed as:

"All that certain piece or parcel of land situate in the Borough of Shippensburg, Cumberland County, Pennsylvania, designated on the Spring House Sub-Division of building lots in Block 'C', Lot no. 5, said plot to be left for recording in the office of the Recorder of Deeds in and for Cumberland County, Pennsylvania, bounded and described as follows:"

This description is followed by a metes and bounds description in which Lots 4 and 6, as well as streets found on the 1956 Plan, are designated as reference points. Lot 5 of Block C or Reed's lot does not abut the park area or the walkways, but is within the same Block and access to the park area could be had by proceeding down either street abutting Reed's lot to the walkways leading to the park area as provided for on the 1956 Plan.

In March of 1966, Company commissioned a new survey of the parcel and prepared a new plot plan (hereinafter 1966 Plan) which makes no reference to a park area or the walkways thereto provided for within Block C on the 1956 Plan.

On March 3, 1967, Company conveyed a tract of land to Chateau Terrace, Inc. (hereinafter Chateau) which included all of Block C as described on the 1956 Plan, Lot 5 or Reed's lot excepted, in addition to part of Block B as designated on the 1956 Plan. The deed was recorded on March 4, 1967 and described the property by metes and bounds but also included a statement that the description was in accordance with the 1966 Plan.

On March 2, 1972, Chateau conveyed to Dale L. Reese, Donald J. Reape, Joseph L. Capano, and Robert Cheikes, individually and as co-partners in College Hill Association (hereinafter Reese) the tract previously conveyed to it by Company. The deed was recorded March 6, 1972. Prior to this conveyance Reese twice attempted to clear

the interest now asserted by Reed in the park area and walkways. The attempts failed and Reese began construction of apartment buildings on the site designated park area on the 1956 Plan.

At the time of Company's conveyance to Reed in 1962, the park area was unimproved. Moreover, Reese now contemplates a park area of a smaller size including a swimming pool near Reed's lot across a street provided for on the 1956 Plan and in Block B.

When Reed learned of Reese's intention to build apartment buildings in that area set aside for a park on the 1956 Plan, this action in equity was instituted seeking an injunction against the obstruction of the designated park area and walkways thereto.[1] The complaint was subsequently amended, over objection, to include an alternative remedy for damages resulting from the construction of apartment buildings in the park area on the 1956 Plan and the resulting diminution in value to Reed's lot which is now improved with a dwelling house. A trial ensued and at its termination the chancellor filed findings of fact and conclusions of law and entered a decree nisi denying Reed relief. Both Reed and Reese filed exceptions. The court en banc subsequently entered a final decree affirming the decree nisi. This appeal by Reed followed.

The chancellor and the court en banc reasoned that since a use as a park was an estate or interest in land rather than an easement or use, Reed was required to show that a dedication or an irrevocable offer to dedicate had been made by Company in order to obtain relief. At trial there was testimony that no oral representations or references to the 1956 Plan were made at the time of sale to Reed,[2] and that no intention to dedicate the park area

1. Although relief was also sought against the obstruction of a street, the request for this relief was not pursued at trial.

2. Although Reed asserts such oral testimony was introduced in violation of the Parol Evidence Rule, timely objections were not made thereto. Furthermore, Reed initially raised this issue by first introducing testimony that such representation had been made.

had been formulated by Company. Relying on this evidence the chancellor and the court en banc found no dedication or irrevocable offer to dedicate had been made by Company at the time of sale to Reed. But it was indicated that if Reed had asserted merely a private right of use or easement, rather than a use as a park or interest greater than an easement, relief would have been proper because an easement would have arisen from Reed's deed incorporating the unrecorded 1956 Plan which designated a park area.

While we recognize that the court's reasoning, that a use as a park could not be a private right of use or easement, was based on language found in *Coffin v. Old Orchard Development Corp.*, 408 Pa. 487, 186 A.2d 906 (1962), and although the final result reached in *Coffin,* supra, was correct, we now retreat from the language in the Court's opinion in that case which indicated that the right to use certain land as a park may not constitute a private right of use or an easement.

In *Coffin,* supra, as here, complainant asserted a use as a park and a dedication. But unlike the instant case, complainant asserted the dedication and/or private right of use resulted solely from oral representations made at the time of sale. Instantly, Reed asserts the dedication and/or private right of use resulted from either oral representations made at the time of sale or from Reed's deed incorporating the 1956 Plan which designated a park area. The latter theory, that the dedication and/or private right resulted because of the deed, was not asserted in *Coffin,* supra, because the plan there did not designate a park area. In dealing with the former theory in *Coffin,* supra, that is, oral representation, we said no dedication resulted because the evidence thereof was not clear and convincing. But, we then stated that no private right of use or easement *could* result since a use as a park was an interest greater than an easement because it was "inconsistent with a general property in the owner."

*Coffin,* supra at 494, 186 A.2d at 910, relying on *Clements v. Sannuti,* 356 Pa. 63, 65, 51 A.2d 697, 698 (1947).

Initially, we note that the result reached in *Coffin,* supra, was correct because the evidence of oral representations was insufficient to establish a private right of use or easement, or a dedication. Moreover, the language in *Coffin,* supra, 408 Pa. at 494, 186 A.2d at 910, quoting from *Clements v. Sannuti,* supra, 356 Pa. at 65, 51 A.2d at 698, which explains the nature of an easement, is also correct.[3] But as applied to the asserted use as a park, the application of the law to the asserted use was incorrect because a use as a park may indeed be an easement. The language quoted in *Coffin,* supra, was originally set forth in *Clements v. Sannuti,* supra, 356 Pa. at 65, 51 A.2d at 698. In that case, the asserted use or easement was for the *exclusive use* of a portion of a garage. The reason that the use there could not be an easement was the asserted use was claimed to be exclusive and as such would have deprived the servient owner of any possession and use. This would indeed be "inconsistent with a general property in the [servient] owner." But in *Coffin,* supra, and instantly, the right of use asserted was not and is not asserted as exclusive and a claim for use as a park is not inherently a claim for exclusive use. Thus, the servient

3. The language from *Coffin,* supra, states:
    "Nor could there be an easement established. We said in *Clements v. Sannuti,* 356 Pa. 63, at page 65, 51 A.2d 697, at page 698 (1947): 'It is the traditionally established doctrine that there can be no easement, no incorporeal right, binding the servient tenement, the effect of which would be to deprive its owner of the right of use or possession thereof. "An easement is a liberty, privilege or advantage which one may have in the lands of another without profit . . . It may be merely negative . . . and may be created by a covenant or agreement not to use land in a certain way . . . . *But it cannot be an estate or interest in the land itself, or a right to any part of it"* (Italics supplied) *Siegel v. Lauer,* 148 Pa. 236, 240, 23 A. 996, 997, 15 L.R.A. 547. "An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special *purpose not inconsistent with a general property in the owner".* . . . ' "

owner in *Coffin,* supra, would not have been deprived of all possession and use, nor would the servient owner instantly.

■ We, therefore, rule that a use as a park, where not claimed by the dominant owner to be exclusive of any use and possession by the servient owner, can be, and is a claim for a right of use or easement. Moreover, our ruling is in accord with general principles of property law, with other decision of this Court, and rulings of numerous other jurisdictions.

■ Where a use as a park is asserted under such circumstances as prevail here, the servient owner is not deprived of possession and use. His possession and use as to that portion of the property designated a park is only limited to the extent his use does not interfere with the dominant owner's use as a park. And although such a limitation may be greater in degree than a limitation resulting from an easement in a street, it does not differ in kind. Clearly an easement for a right of way limits the servient owner's use and possession to practically no use for himself, other than as a street or right of way. Likewise, the servient owner of land subject to a use as a park is practically also limited to use the area as a park. But, it still allows the servient owner possession and, at least one use, that is, as a park. Furthermore, any use the servient owner can devise that is not inconsistent with a use as a park by the dominant owner may also be engaged in.

A comparison with the limitations on possession and use by a servient owner in a park situation with an easement recognized by the Restatement of Property, Servitudes, Ch. 39, § 477, Illustration 1, emphasizes the point. There a right of use to flood the servient owner's land is recognized as an easement. Clearly such a use is a more substantial interference with possession and use by the servient owner than is a use as a park.

Moreover, in *Morrow v. Traction Co.*, 219 Pa. 619, 624, 69 A. 41, 42 (1908), we stated, albeit in another context:

"The authorities seem to be uniform to the effect that the same principles apply to the dedication of public streets, and public squares or parks."

If for the purpose of dedication, parks are treated in the same manner as easements, we have in effect recognized parks as easements or uses rather than as some greater property interest. Finally see 7 A.L.R.2d 607, 650, §§ 11 and 12, and the numerous decisions from other jurisdictions therein cited, which recognize a use of land as a park to be an easement or private right of use.

■■ Since Reed asserted an easement or private right of use as a park, it remains to be determined if the evidence established the existence of such a right. Reed clearly established and the chancellor found that Company conveyed a lot of land to Reed and the deed, which was recorded in 1962, made reference to an unrecorded plot plan of lots upon which the lot sold is designated and which plan designates a park area. Since the use of a park area is an easement, what we have said in other instances concerning streets, applies to parks as well. *Morrow v. Traction Co.*, supra. Moreover, in this regard, Pennsylvania's law is clear: a sale of land and a conveyance by deed making reference to an unrecorded plan which plan includes streets or parks is sufficient to create an enforceable interest, or private right of use, mainly an easement, in the buyer and will normally create an irrevocable offer to dedicate such streets and parks. As stated in *Vogel v. Haas*, 456 Pa. 585, 588, 322 A.2d 107, 109 (1974) quoting from *Brodt v. Brown*, 404 Pa. 391, 394–95, 172 A.2d 152, 154 (1961):

" 'Where a lot of land is conveyed and the deed makes reference to a plan upon which the lot is laid out which, in turn, calls for a certain street thereon, this constitutes a dedication of the use of the street to the

enjoyment of the purchaser as a public way though not yet opened and the map or plan becomes a material and essential part of the conveyance and has the same effect as if incorporated therein. The right of the purchaser, in such an instance, will be protected in equity: *Ferguson's Appeal,* 117 Pa. 426, 11 A. 885 (1888). See also, *Holmes v. Longwill,* 89 Pa.Super. 1 (1926).' Cf. *Powell v. Wian,* 456 Pa. 35, 318 A.2d 346 (1974)."

We expressed no requirement that the plan be recorded and we indicated that recordation was not necessary by ruling incorporation by reference makes the plot plan part of the deed. Moreover, other cases indicate no recording is necessary, see *Davis v. Sabita,* 63 Pa. 90 (1869); *Rahn v. Hess,* 378 Pa. 264, 106 A.2d 461 (1954); *O'Donnell v. Pittsburgh,* 234 Pa. 401, 83 A. 314 (1912). Further, in *O'Donnell v. Pittsburgh,* supra at 410, 83 A. at 317, we stated:

"If there is anything settled by judicial decision in this state, it is that a sale of lots according to a plan which shows them to be on a street implies a grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication [more correctly, an irrevocable offer since acceptance is necessary to complete a dedication] of it to public use; and that the owner of any lot in the general plan may assert the public character of any street and the right of the public to use it. The rights in dedicated streets acquired by a purchaser of lots by a deed referring to a plot are private contract rights [more correctly, property rights], and are not affected by the failure of the municipality to act upon the dedication: 3 Dill. on Mun.Corp. (5th Ed.) § 1083. The owner of real estate, so long as he infringes no law, may do with it as he pleases; he has the right to dispose of it in any legal way which he may choose; he may sell it as a whole, or in parts; he may lay it out in lots intersected by streets and alleys, and sell the lots

with or without a grant to the purchasers and the public of an easement over the streets and alleys. If he lay the property out in lots, according to a plan disclosing such streets and alleys, and sells a lot, the law implies a grant or covenant on his part that all the streets and alleys on the plan shall remain open for the use of the public. The price paid for a lot is enhanced by the value of the easement in the streets and alleys appurtenant to the lot. The consideration is not only for the lot but for the easement as well. The proprietor of the plan therefore cannot revoke the implied easement or dedication; nor can the owner of any lot or lots, having purchased with a knowledge of the plan in accordance with which the lots were sold, obstruct or deny to the public the right to use any of the streets or alleys shown on the plan. The easement over the streets is appurtenant to every lot and becomes a property interest in the purchaser of the lot which may be protected by appropriate legal process."

Again no requirement that the plan be recorded was mentioned. Nor are we now willing to impose such a requirement. While we do not suggest that this record indicates that fraud exists in this case, the reason we do not require the plan to be recorded is to protect against the possibility of fraud or misrepresentation through the use of an unrecorded plan. The seller can adequately protect himself by not making any reference in the deed to the unrecorded plan and such a rule causes little, if any, interference with the business transaction.[4] Finally, the act of recordation of a plan operates as an offer to dedicate without regard to a sale,[5] *Quicksall v. Phila-*

4. We note that where the asserted easement is alleged to have resulted not by the deed incorporating the plan but by oral representations at the time of sale, the factual inquiry as to the existence of misrepresentations or fraud cannot be avoided as it can instantly. See *Coffin,* supra.

5. Although, without a sale or an acceptance by a public body of the offer, the owner might be able to revoke the offer to dedicate

*delphia,* 177 Pa. 301, 35 A. 609 (1896) and *Kniss v. Duquesne,* 255 Pa. 417, 100 A. 132 (1917), and thus were we to require recordation of the plan as well as the deed incorporating the plan by reference, we would in effect be merging two distinct theories which give rise to an easement and offer to dedicate into one.

█ Thus, even though the plan was unrecorded, since the recorded deed made reference to the plan which, in turn, designated an area as a park, the sale of the lot and deed to Reed was in itself sufficient to establish in Reed, as a matter of law, a private right of use or easement in the designated park area. *Vogel v. Haas,* supra, and *Brodt v. Brown,* supra. See also, *Morrow v. Traction Co.,* supra.[6]

█ There remains the question of notice of Reed's right in the park area to subsequent purchasers from Company. Reed's deed which contained a specific reference to the 1956 Plan was recorded on July 25, 1962. Subsequent purchases from Company did not occur until March 3, 1967 when Chateau purchased the remainder of the property. It follows that if Reed's deed is sufficient to provide notice, then all subsequent purchasers from

by recording a revised plan, the dedication can be completed by acceptance by a public body without a sale ever occurring.

6. The chancellor's finding that no offer to dedicate was made by Company was predicated upon his evaluation of the evidence presented to establish an offer to dedicate through oral representations made at the time of sale. See, e. g., *Coffin,* supra. Such a finding is immaterial to the establishing of a private right of use based on the theory that the private right of use resulted from the deed incorporating the plan which in turn designated a park area. *Vogel v. Haas,* supra; and *Brodt v. Brown,* supra. See generally, 7 A.L.R.2d 607, 650, §§ 11, 12, and 13; *Cohen v. Simpson,* 385 Pa. 352, 123 A.2d 715 (1956); *Whittaker Appeal,* 386 Pa. 403, 126 A.2d 715 (1956).

Indeed, the chancellor specifically stated that Reed would have been entitled to relief by the showing of the private right of use through the deed incorporating the plan which in turn designated the park area *if a use as a park could be a private right of use or easement.* Since we have already determined that a use as a park can be a private right of use or easement, supra at 667–669, our determination that a private right of use was established by Reed is in accord with the chancellor's statement.

Company, including Reese, were provided with constructive notice of Reed's right since persons are charged with notice of the entire contents of a deed, *Finley v. Glenn*, 303 Pa. 131, 154 A. 299 (1931), and since Reed's deed was within the chain of title flowing from the common grantor or Company. *Finley v. Glenn*, supra. In *Jones v. Sedwick*, 383 Pa. 120, 117 A.2d 709 (1955), reiterating the law of Pennsylvania, we stated that a reference in a recorded deed to an unrecorded plan is notice to a subsequent purchaser of the plan's existence, puts the purchaser on inquiry, and thus, binds him to its contents. See generally, *Detwiler v. Coldren*, 101 Pa.Super. 189 (1931); *McKee v. Perchment*, 69 Pa. 342 (1871); *Baltimore and Ohio R. R. v. Wilson Snyder Mfg. Co.*, 279 Pa. 219, 123 A. 858 (1924). Thus, since Reed's deed made clear reference to the 1956 Plan, subsequent purchasers, including Chateau and Reese, were bound to the contents of the 1956 Plan and the designated park area.

Therefore, since Reed has established a private right of use and since adequate notice to all subsequent purchasers of that right was provided, Chateau and Reese took the remainder of Company's property subject to the right of Reed to use the designated park area. Thus, Reese's use of the area for apartment buildings is an impingement upon Reed's right. Accordingly, Reed may be entitled to specific relief or damages which will be fair and equitable.[7]

The decree of the court en banc is reversed and the case is remanded for further proceedings consistent with the views expressed herein. Costs on appellees.

JONES, C. J., took no part in the consideration or decision in this case.

O'BRIEN, ROBERTS, POMEROY and NIX, JJ., concur in the result.

---

7. If the trial court determines it is now necessary to rule on the objection entered to the filing of the amended complaint, it may do so.