496 A.2d 1188

**Frank J. POTIS and Angela Potis, husband and wife, Appellants,**

v.

**Paul COON and Beverly Coon, husband and wife, and Ransom Township.**

Superior Court of Pennsylvania.

Argued April 3, 1985.

Filed Aug. 2, 1985.

444

John A. Mihalik, Bloomsburg, for appellants.

Joseph P. Lenahan, Scranton, for appellees.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

The sole issue on appeal is whether lot owners in a subdivision acquired a private easement over an unopened road because their deeds referred to a map of the subdivision showing such road where the map was unrecorded and the lots in question did not abut on the road. We find that appellants acquired an easement over the unopened road and, accordingly, reverse.

In 1968, Samuel J. Coon and Mary N. Coon (Samuel and Mary) owned a piece of property in Ransom Township which they decided to develop into a residential subdivision. On September 5 of that year, upon Samuel's request, Kenneth C. Seamans, a professional surveyor and engineer, prepared a map (1968 Map) showing a subdivision composed of various lots and two parallel "40–foot" roads. *See* Diagram A. On July 9, 1969, appellants, James P. Whitman and Judith Whitman, (the Whitmans) purchased Lot No. 1 in the subdivision from Samuel and Mary and received a deed which referred to the 1968 Map. (N.T. December 13, 1983 at 14–15). On October 26, 1970, Seamans prepared a second map (1970 Map) which added a plan for lots to be sold on the northwest side of the upper 40–foot road. *See* Diagram B. On April 5, 1972, Samuel and Mary conveyed Lot No. 2 to Edward H. Coon and Anna Coon (Edward and Anna). On May 21, 1972, Seamans prepared a third map (1972 Map) which reflected the same area as that shown on the 1968 Map and merely extended the southeastern portion. *See* Diagram C. None of the three maps was ever recorded. (N.T. December 13, 1983 at 4).[1] Both the 1970 May and the 1972 Map show a "U"-shaped 40–foot road encircling the portion of the subdivision containing the lots in question, and both open ends of this "U" are anchored on Ransom Road.

On June 29, 1973, appellants, Fred Vrabel and Mary Ann Coury, purchased Lot No. 2 from Edward and Anna and received a deed which referred to a map based on the 1972 Map. (N.T. December 13, 1983 at 15). After these purchasers were married, they conveyed the lot to themselves as Fred Vrabel and Mary Anne Vrabel (the Vrabels) on May 28, 1974. In October or November of 1974, appellants, Frank J. Potis and Angela Potis, (the Potises) entered into a purchase agreement with Mary Coon[2] for Lot No. 4. The

1. Seamans had numbered both the 1968 Map and the 1972 Map as "Map No. 3" whereas he had numbered the 1970 Map as "Map No. 4". (N.T. December 13, 1983 at 19–20). The subdivision labeled "Block B" on the 1968 and 1972 Maps is labeled "Block A" on the 1970 Map.

2. Samuel Coon had died on May 4, 1974.

Potises made monthly payments until December 8, 1976, when Mary delivered the deed to Lot No. 4 to the Potises. This deed referred to the 1972 Map. (N.T. December 13, 1983 at 17–18).

Meanwhile, on July 16, 1975, appellees, Paul Coon and Beverly Coon, acquired by deed ownership of the lands surrounding the subdivision in question from Mary Coon. In 1976 or 1977, Mary transferred the remainder of her property to appellees.[3] Appellees then decided to resubdivide the acquired lands. This resubdivision would effectively eliminate the upper leg of the 40–foot road by changing it into a cul-de-sac. *See* Diagram D. This upper leg is an unopened road (*i.e.,* a road not opened or used as a public street). On June 4, 1979, appellee Ransom Township approved of the proposed resubdivision plan.

Consequently, on March 24, 1980, appellants (the Whitmans, Vrabels, and Potises)[4] filed a complaint against appellees (Paul and Beverly Coon, and Ransom Township), seeking an injunction against the transfer of any lots or the issuance of any permits in connection with the proposed resubdivision which would interfere with their rights to ingress and egress through the unopened road (*i.e.,* the upper leg of the 40–foot road). Appellants' lots front on the bottom leg of the 40–foot road, and it is undisputed that appellants have never used the upper leg of the road. *See* Lots 1, 2, and 4 in Diagrams A and C. After appellees filed their answers, the lower court held a hearing on December 13, 1983 for the presentation of evidence. Subsequently, on February 28, 1984, the lower court filed an opinion and order denying appellants' request for injunctive relief. The court held that appellants had failed to establish the existence of an easement by implication over the unopened road. Appellants then filed a motion for post-trial relief on March 8, 1984, requesting modification of the February 28 order so

3. Mary Coon died on July 25, 1980.

4. Robert L. Colville and Margaret W. Colville also joined in the complaint but are not involved in the instant appeal because the matter was discontinued with respect to them on March 4, 1981.

as to grant the injunctive relief sought. Finally, on September 28, 1984, the lower court filed an opinion and order dismissing the motion for post-trial relief. This September 28 order was reduced to judgment and entered upon the docket on October 26, 1984, thereby prompting the instant appeal.[5]

Appellants contend that, by reference to the 1968 and 1972 Maps in their deeds, an *express* easement by reference to map or plate was created in them over the top leg of the "U"-shaped road, and that such easement cannot be extinguished by appellees' resubdivision of the northwestern portion of the property. Appellees assert, however, that the lower court correctly ruled that appellants failed to meet the criteria for an *implied* easement as stated in *Thomas v. Deliere*, 241 Pa.Superior Ct. 1, 359 A.2d 398 (1976).[6]

 We find that neither position is entirely correct. An easement by reference to a map or plate is not an

---

5. Ransom Township apparently did not file an appellate brief.

6. In *Thomas v. Deliere, supra,* which involved an easement by implication based on prior use, this Court stated:

> In determining whether the circumstances under which a conveyance of land is made create an implied easement, § 476 of the Restatement [of Property (1944) ] suggests that the following factors are important: "(a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous conveyee, (e) the extent of the necessity to the claimant, (f) whether reciprocal benefits result to the conveyor or conveyee, (g) the manner in which the land was used prior to its conveyance, and (h) the extent to which the manner of prior use was or might have been known to the parties." As the comments to § 476 clearly demonstrate, no single factor is dispositive and no purely mathematical weighing of factors is possible. Comment g., however, states: "In the greater number of cases, its necessity to the use of land of the claimant is the circumstance that contributes most to the implication of an easement. If no use can be made of the land conveyed or retained without the benefit of an easement, it is assumed that the parties intend the easement to be created." Conversely, as the degree of necessity decreases, the need to refer to other factors suggestive of an intent to create an easement increases substantially.
>
> 241 Pa.Superior Ct. at 4–5, 359 A.2d at 400.

express easement [7] but, rather, an easement by implication. *See McAndrews v. Spencer,* 447 Pa. 268, 290 A.2d 258 (1972); *Rahn v. Hess,* 378 Pa. 264, 106 A.2d 461 (1954). However, the criteria enumerated in *Thomas v. Deliere* do not apply to an easement by reference to a map or plate, which is a particular type of implied easement controlled by its own principles.[8] Instead, we look to the following well established principles concerning an easement by reference to a map or plate:

> It is well settled that the grantee of a lot, which is sold according to a plan of lots on which streets or alleys not previously opened or projected as a public street are plotted out by the grantor, acquires an easement over those streets and alleys as a private right of property arising out of the grant, of which he cannot be deprived without compensation[.]

*Cox's Inc. v. Snodgrass,* 372 Pa. 148, 152, 92 A.2d 540, 541 (1952). *Accord In re Penn Avenue (Whittaker Appeal),* 386 Pa. 403, 407–08, 126 A.2d 715, 717–18 (1956); *Cohen v. Simpson Real Estate Corp.,* 385 Pa. 352, 355, 123 A.2d 715, 716 (1956); *Peterson v. Pittsburgh Public Parking Authority,* 383 Pa. 383, 387, 119 A.2d 79, 81 (1955); *Dillon v. Klamut,* 278 Pa.Superior Ct. 125, 132, 420 A.2d 462, 464 (1980); *Travaglia v. Weinel,* 191 Pa.Superior Ct. 323, 327, 156 A.2d 597, 599 (1959); *Oxford Falls Industrial Park, Inc. v. Evans,* 59 D. & C.2d 783, 788–89 (Bucks Co. 1972).[9]

**7.** An express easement may be created by an express grant or reservation in the deed or instrument. *See Brady v. Yodanza,* 493 Pa. 186, 425 A.2d 726 (1981); *Merrill v. Manufacturers Light and Heat Co.,* 409 Pa. 68, 185 A.2d 573 (1962); *Nallin-Jennings Park Co. v. Sterling,* 364 Pa. 611, 73 A.2d 390 (1950); *Duncan v. Gheen,* 185 Pa.Superior Ct. 328, 138 A.2d 168 (1958).

**8.** Yet another type of implied easement is an easement created upon the severance of the unity of ownership in an estate. *See DePietro v. Triano,* 167 Pa.Superior Ct. 29, 31–32, 74 A.2d 710, 711 (1950) (four criteria: "(1) a separation of the title, (2) such continuous and obvious user before the separation as to show an intention to make the alleged easement permanent, (3) the easement must be necessary to the beneficial enjoyment of the land granted or retained; and (4) the servitude should be continuous and self-acting").

**9.** The corollary principle is that:

*References to a plan contained in deeds make the plan
a part of the deed* or conveyance and constitute a dedica-
tion of the streets, alleys and ways shown on the plan, to
the use of the purchasers as public ways[.] ... "Where a
street called for a boundary in a deed is not a highway
nor dedicated to public use, the grantee does not take title
in fee to the center of it, but by implication acquires an
easement, or right of way, over the lands. There is in
such a case, an implied covenant that there is a way
corresponding with the one described in the deed, that so
far as the grantor is concerned it shall be continued and

Where there has been a prior opening or projection by a municipali-
ty or a dedication by a private owner and acceptance by a munici-
pality of streets and alleys appearing on a plan of lots, a subsequent
purchaser of a lot which is part of the plan of lots obtains no private
right to an easement over those streets. The right of the public is
paramount ... and the right of the grantee of the lot is limited to an
easement by necessity.

*Cox's Inc. v. Snodgrass,* 372 Pa. 148, 152, 92 A.2d 540, 541 (1952)
(emphasis omitted).

By way of general explanation, we note that where an owner of land
subdivides it into lots and streets on a plan and sells his lots accord-
ingly, there is an implied grant or covenant to the purchaser that the
street shall be forever open to the use of the public and operates as a
dedication of them to public use. The right passing to the purchaser
is not the mere right that he may use the street, but that all persons
may use [it.]

*Rahn v. Hess,* 378 Pa. 264, 268, 106 A.2d 461, 463 (1954). If the public
has not accepted the offer to dedicate the street to public use within
21 years after the dedication, then the public's right to accept the offer
is foreclosed under the Act of 1889, *see* 36 P.S. § 1961. 378 Pa. at
268–69, 106 A.2d at 463–64. However, the individual's property right
in the dedicated street is a private contractual right resulting as a legal
consequence from the implied covenant under which the grantee
purchased, and, as such, is not affected by the failure of the munici-
pality to act upon the dedication; therefore, even though public rights
in the street are lost, private easements are left unaffected unless
surrendered. 378 Pa. at 271, 106 A.2d at 464. *Accord In re Penn
Avenue (Whittaker Appeal),* 386 Pa. 403, 407–08, 126 A.2d 715, 717–18
(1956); *Drusedum v. Guernaccini,* 251 Pa.Superior Ct. 504, 508–09,
380 A.2d 894, 895–96 (1977); *McLaughlin v. Cybulski,* 192 Pa.Superior
Ct. 7, 10, 159 A.2d 14, 16 (1960).

In the instant case, Ransom Township's approval of the proposed
resubdivision plan arguably constituted a rejection of the implied
offer to dedicate the unopened leg of the 40–foot road to public use.
In any case, appellants' private easement rights in the road would
remain unaffected by the township's actions.

that the grantee, his heirs and assigns, shall have the benefit of it." ...

*Vinso v. Mingo*, 162 Pa.Superior Ct. 285, 287–88, 57 A.2d 583, 584–85 (1948) (citations omitted) (emphasis added). *See also Hunsicker v. Katz*, 310 Pa.Superior Ct. 213, 456 A.2d 576 (1983). Additionally,

> The rights of a non-abutting property owner within the plan are no less than those of a property owner abutting upon the street in question[.] ... The non-abutting property owner's rights in the street grid of the plan are not limited to those streets which are necessary to the enjoyment of his property or which materially benefit or add to its value[.]

*Drusedum v. Guernaccini*, 251 Pa.Superior Ct. 504, 508–09, 380 A.2d 894, 895–96 (1977) (citations omitted). *Accord Cohen v. Simpson Real Estate Corp., supra* 385 Pa. at 355–56, 123 A.2d at 716–17; *Grimes v. Schmidt*, 184 Pa.Superior Ct. 159, 162–63, 132 A.2d 406, 407–08 (1957); *Oxford Falls Industrial Park, Inc. v. Evans, supra* at 789–91.[10]

Moreover,

> [A] sale of land and a conveyance by deed making reference to an *unrecorded* plan which plan includes streets or parks is sufficient to create an enforceable interest, or private right of use, mainly an easement, in the buyer and will normally create an irrevocable offer to dedicate such streets and parks.

*Reed v. Reese*, 473 Pa. 321, 329, 374 A.2d 665, 669 (1976) (emphasis added);[11] *accord Jones v. Sedwick*, 383 Pa. 120,

---

**10.** "The majority of jurisdictions, including Pennsylvania, adhere to the 'broad' view that the [subdivision] owner's right accrues as to all of [the] streets within a subdivision where a conveyance is made with reference to a plan." *Oxford Falls Industrial Park, Inc. v. Evans*, 59 D. & C.2d 783, 789 n.4 (Bucks Co.1971).

**11.** In *Reed*, our Supreme Court further stated:
Thus, even though the plan was unrecorded, since the recorded deed made reference to the plan which, in turn, designated an area as a part, the sale of the lot and deed to Reed [purchaser-grantee]

117 A.2d 709 (1955) (fact that plan of subdivision marking location of each lot and the drive had not been recorded was immaterial); *see also Ott v. Reager,* 313 Pa.Superior Ct. 365, 370, 459 A.2d 1272, 1275 (1983) ("Incorporation of streets and alleys into a plan, recorded or unrecorded, constitutes an offer to dedicate the streets and alleys for use by the public (as well as owners of land within the plan)").[12]

In the instant case, we must examine appellants' respective deeds and the maps referred to therein in order to determine whether appellants acquired an easement over the unopened road by reference to such maps. The Whitmans' deed, dated July 9, 1969, contains the following description of Lot No. 1:

BEGINNING at a point in the center line of Ransom Road, said point is located 365 feet North 50° 20' West from a bolt at the intersection of the center line of said Ransom Road with the center line of Red Oak Drive, also being southeasterly corner of a *proposed 40 foot wide road* and running thence from said point of beginning along the center line of said Ransom Road North 50° 20' West, 125 feet to a point, being the southeasterly corner of a parcel of land conveyed by the Grantors herein to Andrew G. Hitzel, et ux; thence along the lands of Hitzel North 49° 40' East, 200 feet to a point; thence along the *proposed 40 foot wide road* South 49° 40' West, 200 feet to the point and place of beginning. *Containing 0.5739*

was in itself sufficient to establish in Reed, as a matter of law, a private right of use or easement in the designated park area. 473 Pa. at 332, 374 A.2d at 670. We note that, in that case, Reed's lot did not abut on the park area in question.

**12.** *Nord v. DeVault Contracting Co., Inc.* 460 Pa. 647, 334 A.2d 276 (1975), relied upon the lower court and appellees, is distinguishable from the instant case. In *Nord,* the Supreme Court held that no easement by implication was granted to lot owners where, although the lots abutted land described in the first subdivision plan as a street, the owners purchased by reference to a later subdivision plan which made no reference to the street. Here, however, appellants purchased their lots by reference to subdivision plans (*i.e.,* the 1968 and 1972 Maps) which showed the unopened road over which the easement is claimed.

*of an acre and being Lot 1, Block B, as shown on Map # 3, made by Kenneth C. Seamans, Registered Survey- or, dated September 5, 1968. A copy of said map is attached hereto and made a part hereof.*

(Emphasis added). The Vrabels' deed, dated May 28, 1974,[13] describes their lot, as follows:

BEGINNING at an iron pin corner on the northwest side of a *proposed forty (40) foot road* leading from Ransom Road to said lot, *this corner also being the southeast corner of Lot # 1, Block B Map # 3;* thence along the right of way of *proposed forty (40) foot road* North thirty-nine (39) degrees forty (40) minutes East two hundred (200) feet to an iron pin corner of *Lot # 3, Block B;* thence along line of *Lot # 3* North fifty (50) degrees twenty (20) minutes West one hundred twenty-five (125) feet to an iron pin corner of *Lot # 2A, Block B;* thence along line of *Lot # 2A* South thirty-nine (39) degrees forty (40) minutes West two hundred (200) feet to an iron pin corner of *Lot # 1, Block B;* thence along line of *Lot # 1,* South fifty (50) degrees twenty (20) minutes East one hundred twenty-five (125) feet to iron pin corner in right of way of road place of beginning. Containing 25,000 square feet of land be the same more or less.

 * * * * * *

BEING the same premises which were conveyed from Samuel J. Coon, et ux, to Edward H. Coon, et ux., recorded in Deed Book 774, page 228. *The above men- tioned Map # 3 is a map of lands of Samuel J. Coon, et ux, in Ransom Township as surveyed by Kenneth C. Seamans, Registered Surveyor, which map is dated April 5, 1972, and is recorded in Deed Book 774, at page 228.*

ALSO BEING the same premises conveyed by deed of Edward H. Coon, et ux. to Fred Vrabel and Mary Anne

**13.** This deed was the one from Fred Vrabel and Mary Anne Coury to Fred Vrabel and Mary Anne Vrabel. The deed from Edward Coon and Anna Coon to Fred Vrabel and Mary Anne Coury is not a part of the record. We note, however, that the 1974 deed states that the premises conveyed are the same as those conveyed by the 1973 deed.

Coury, now by marriage Mary Anne Vrabel, Grantors herein, which deed is dated June 29, 1973, and is recorded in Lackawanna County in Deed Book 802, at page 736, et seq.

(Emphasis added).[14] The Potises' deed, dated December 8, 1976, describes their lot, in part, as follows:

BEGINNING at a corner on the west side of a *40 ft. road* leading from said lot to Ransom state road, this corner also being the southeast corner of *lot #3* owned now or formerly by George A. Ross; thence along right-of-way of said road North thirty-nine (39) degrees forty (40) minutes East two hundred (200) feet to corner of *lot #5;* thence along line of *lot #5* North fifty (50) degrees twenty (20) minutes West one hundred twenty-five (125) feet to corner of *lot #4A;* thence along line of *lot #4A* South thirty-nine (39) degrees forty (40) minutes West two hundred (200) feet to corner of *lot #3* owned now or formerly by George A. Ross; thence along line of ....

\* \* \* \* \* \*

*Surveyed August 17, 1974 by Kenneth C. Seamans, Factoryville, Pennsylvania, and being known as Lot #4, Block B, on Map #3 of Mary N. Coon, widow. The said map is recorded in the Office of the Recorder of Deeds in and for Lackawanna County in Deed Book Volume 836 at page 362.*

(Emphasis added).

■■■■ As we have previously stated, the Whitmans' deed refers to the 1968 Map whereas the Vrabels' and Potises' deeds refer to the 1972 Map. These (unrecorded) maps show a subdivision plan bounded on two sides by two legs of a 40–foot road. *See* Diagrams A and C. This 40–foot road (as well as other lots in the subdivision) is expressly referred to in the deed descriptions of appellants' lots. Moreover, the Whitmans' deed specifically states that the 1968 Map is to be made a part of the deed. Under the

**14.** Although the Vrabels' deed and the Potises' deed both state that the 1972 Map was recorded, it is undisputed by the parties that this map is unrecorded.

above-cited caselaw, then, we are compelled to conclude that appellants, as grantees of lots in the subdivision, acquired an easement over the unopened road in question (*i.e.*, top leg of the "U") because their lots were sold according to a plan of lots on which the road was plotted out by the grantor.[15] Additionally, under the principles we have cited above, the fact that the maps were unrecorded and the fact that appellants' lots do not abut on the road in question do not affect appellants' contractual rights to the easement; nor do the requirements of prior use or necessity apply to an easement created by reference to a map or plate.

Therefore, we hold that appellants have a private easement over the unopened road plotted on the subdivision plans referred to in their deeds which has not been surrendered and therefore cannot be extinguished without their consent. Accordingly, we reverse the order and judgment below denying appellants' motion for post-trial relief and remand the case for proceedings consistent with this opinion.

Reversed and remanded. Jurisdiction is not retained.

15. At the hearing in the lower court, appellants presented testimony to the effect that Samuel and Mary Coon had informed them, before they purchased their lots, that there would be a "U"-shaped or horseshoe-shaped road, with an entrance and exit, around the development. (N.T. December 13, 1983 at 25–27, 31–35, 38–39). Mrs. Whitman and Mrs. Potis also testified that they were shown the 1968 Map and 1972 Map, respectively. (*Id.* at 27, 38). This testimony reinforces our conclusion that the lots were sold by reference to a subdivision plan showing the unopened road over which appellants claim an easement.

DIAGRAM A
(Simplification of 1968 Map)

DIAGRAM B
(Simplification of 1970 Map)

458

DIAGRAM C
(Simplification of 1972 Map)

DIAGRAM D