**UNIONVILLE–CHADDS FORD SCHOOL DISTRICT, Appellant,**

v.

**CHESTER COUNTY BOARD OF ASSESSMENT APPEALS and Longwood Gardens, Inc.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1997.

Decided April 21, 1997.

Ira Weiss, Pittsburgh, for appellant.

Thomas A. Riley, Jr., Paoli, for appellee, Longwood Gardens, Inc.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, KELLEY and LEADBETTER, JJ.

COLINS, President Judge.

Proximately located just beyond the urban sprawl of Philadelphia, Pennsylvania, and Wilmington, Delaware, Longwood Gardens is undisputedly one of the world's great public gardens. In the instant matter, the Unionville–Chadds Ford School District (School District) appeals from the July 11, 1995 order of The Honorable Robert J. Shenkin, Judge of the Court of Common Pleas of Chester County, affirming determinations of the Chester County Board of Assessment Appeals that four parcels owned by Longwood Gardens (Longwood Gardens or Longwood) are exempt from real estate taxation.

The issues on appeal are whether Longwood Gardens is a "purely public charity" and whether it qualifies for real estate tax exemption under the applicable sections of The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–1—5020–602.

Longwood Gardens, a 1050–acre public garden located in Chester County was purchased in 1906 by Pierre Samuel du Pont. The property, originally acquired in about 1700 in a grant from William Penn, was the site of an arboretum created by members of the Peirce family. Working with a botanist, the Peirce family acquired and planted a collection of non-indigenous plants presented in a park-like setting. Recognizing the historic and horticultural value of the arboretum, and wanting to preserve the property and prevent the harvest of its timber, du Pont purchased the property in 1906, gradually developing the gardens and adding a conservatory, water garden, fountains, and open air theater. Du Pont opened the gardens to the public in the 1920s and established a trust (Trust) to maintain the gardens in about 1946. In 1970, the trust transferred the gardens to Longwood Gardens, Inc., the non-profit operating foundation that currently owns the property. Longwood Gardens in its entirety and the Peirce family home are listed on the National Register of Historic Places maintained by the U.S. Department of Interior.

In addition to the public gardens, Longwood Gardens includes walking trails and watershed areas, and educational and research facilities, including classrooms, a library, demonstration gardens, and plant collections. Longwood Gardens currently educates over forty students, providing tu-

ition, housing, and living expenses.[1] Educational activities also include an ornithology program to study and preserve wild bird habitats and a fee-based program[2] of continuing education. Longwood participates in joint education programs with the Philadelphia school system and Kennett Consolidated School District.

Research activities include plant collection, hybridization, propagation, and evaluation (e.g., for commercial, medical, and aesthetic value). Longwood Gardens currently dedicates five full-time staff members to research in addition to some part-time staff assignments and students; it shares the results of its research with public and private enterprises. It participates in a longstanding cooperative venture with the U.S. Department of Agriculture and regularly exchanges information and plants with the National Arboretum and colleges and universities nationwide. Longwood functions as part of an extension service involving the nation's land grant colleges and universities working with the general public.

Longwood Gardens' 1994 operating expenses exceeded revenue by approximately $8 million, not including approximately $5 million in capital expenses for physical restoration and improvements. The Trust annually subsidizes—from interest and/or principal—approximately 40 percent of operating expenses not covered by operating revenues. Longwood charges for admission to the public gardens; full price admission is $10 for adults, with discounted admission of $4 for ages 15 to 20, $1 for ages 6 to 15, and under age 6 for free. Adult admission is reduced to $6 every Tuesday, and reduced or free admission is regularly available to persons sponsored by federally tax-exempt organizations and government organizations. Visitor

passes priced at $35 each entitle the holder to unlimited admissions. To cover its costs, Longwood would have to charge each visitor $22 for admission (a minimum subsidy of $12 per visitor).

Longwood Gardens employs approximately 170 full-time and 107 part-time (seasonal) workers (hourly wage) in addition to its 135 volunteers and 30 to 40 students. Management includes a director/chief operating officer, who oversees three department heads and reports to a board of trustees. The director is responsible for budget and policy development, leadership, and daily operational activities. Each manager receives a salary and use of a car; managers pay market-rate rents for the use of homes owned by Longwood Gardens on its grounds.

Longwood Gardens contributes to the surrounding community. It donated over $2 million and 1.8 acres of real property to the East Marlborough Township for highway improvements. It donates fire protection to the surrounding community through the use of its fire-fighting equipment and the services of its employees acting as volunteer members of the fire company; it donates landscaping expertise and materials to community projects; it donates the use of its facilities to community charities at cost; and it participates in community events. In 1994, Longwood Gardens hosted over 450 events as part of its performing arts program,[3] which events are open to the public at no additional cost over the regular admission price.

## PENNSYLVANIA TAX EXEMPTION LAW

The Pennsylvania Constitution provides that the General Assembly may exempt from taxation institutions of purely public charity and that portion of the institution's real prop-

---

1. Longwood Gardens funds a two-year joint graduate program with the University of Delaware in public horticulture administration for ten students, paying tuition expenses of $20,000 to $27,000 per student. Internship programs for seventeen students of horticulture, landscape architecture, forestry, and related fields include the students' work clothing and equipment, and staff evaluations. The professional gardener program offers approximately fourteen students a two-year apprenticeship in horticulture and related fields.

2. These fees defray the direct costs of providing the programs.

3. Music, dance, and theater events including the Kennett Square and Delaware symphonies, Philadelphia ballet company, folk dance groups, and non-profit Brandywinners amateur theater company.

erty that is actually and regularly used for its charitable purposes. Pa. Const. art. VIII, § 2(a)(v). Under that authority, the General Assembly passed Section 204(a) of the Law, exempting, in pertinent part, the property of

> (3) All ... institutions of learning, benevolence, or charity, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose ...;

> ....

> (6) All public parks when owned and held by trustees for the benefit of the public, and used for amusements, recreation, sports and other public purposes without profit;

72 P.S. § 5020–204(a)(3) and (6). To qualify for exemption, Longwood Gardens must be an institution of purely public charity, and it must fit within a statutory exemption.

■ The Pennsylvania Supreme Court in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985), articulated a five-part test for determining whether an institution qualifies as a purely public charity. In order to so qualify, the institution must 1) advance a charitable purpose, 2) donate gratuitously a substantial portion of its services, 3) benefit a substantial and indefinite class of persons who are legitimate subjects of charity, 4) relieve the government of some of its burden, and 5) operate entirely free from private profit motive. *Id.* at 22, 487 A.2d at 1317. An entity claiming to be a purely public charity has the burden of proving that its operation satisfies all five criteria

for tax exemption purposes. *Couriers–Susquehanna v. Dauphin County*, 165 Pa. Cmwlth. 192, 645 A.2d 290 (1994).

## THE APPEAL

On appeal, the School District argues that the trial court erred in its determination that Longwood Gardens is a purely public charity; except for the stipulation that Longwood advances a charitable purpose, the School District argues that Longwood does not meet the last four *Hospital Utilization Project* (*HUP*) criteria. Second, the School District argues that the trial court erred in concluding that Longwood Gardens is exempt as a "public park" under Section 204(a)(6) of the Law, 72 P.S. § 5020–204(a)(6), because, it contends, the public park exemption does not apply to privately owned property that has not been dedicated to public use.

■ In an appeal of a local agency decision where the trial court takes de novo evidence, our review is limited to determining whether constitutional rights were violated or whether the trial court manifestly abused its discretion or committed an error of law. *City of Washington v. Board of Assessment*, 666 A.2d 352, 358 (Pa.Cmwlth. 1995), *petition for allowance of appeal granted*, 545 Pa. 672, 681 A.2d 1344 (1996). Whether an institution is one of purely public charity is a mixed question of law and fact on which the trial court's decision is binding absent an abuse of discretion or lack of supporting evidence. *Id.*

### Advances a Charitable Purpose

■ Although the School District apparently stipulated that Longwood Gardens advances a charitable purpose,[4] Judge Shenkin made his own inquiry and concluded that Longwood's primary charitable purpose is as an arboretum, in addition to its advancing horticultural and floricultural education and research. On appeal, the School District contends that the court erred in applying an

---

4. [C]ounsel for the School District has stipulated that Longwood Gardens already satisfies this first element of analysis, namely that it advances a charitable purpose. However, in their brief, the School District attempts to limit that stipulation to the charitable purpose of advancement of "horticultural and floricultural

education and research." But the stipulation was not so limited at trial and we find that we must look to all relevant charitable purposes, particularly the primary purpose of the institution.
(Trial Court Opinion at pp. 10–11.)

overly broad classification of the charitable purpose.

Quoting the relevant portion of the trial transcript, the School District again asserts that the stipulation was limited.[5] We disagree. The quoted language establishes only that the School District conceded that Longwood Gardens advances an unspecified charitable purpose. When questioned by the trial judge, the School District in no way limited the scope of the concession, and the court made it clear at that time, given the School District's agreement, that the court would consider the issue closed and Longwood Gardens' burden on this issue to have been met.

The trial court did not abuse its discretion in defining Longwood Gardens' charitable purpose as primarily an arboretum, in addition to its advancing education and research. Judge Shenkin's conclusion is supported by the undisputed fact that Longwood Gardens functions primarily as a public garden, its primary attraction to the general public.

> The word "charitable," in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public': Knight's Est., 159 Pa. 500, 502.

*Taylor v. Hoag*, 273 Pa. 194, 196, 116 A. 826 (1922).

### Donates or Renders Gratuitously a Substantial Portion of Its Services

■ The trial court found that Longwood Gardens donates gratuitously a substantial portion of its services in that admission fees finance less than 30 percent of its operating expenses; it provides most of its educational services either free or at cost; and it donates the benefits of its research at no cost to other institutions, both commercial and not-for-profit.

Distinguishing Longwood Gardens' "services" from its "operating costs," the School District contends that the court erred because the majority of those who partake of Longwood's services pay for them and only a small percentage of the garden's visitors receive reduced admission prices; furthermore, the School District contends that Longwood donates none of its continuing education services and collects fees for fireworks shows, merchandise sold at its gift shop, and restaurant services. In its application of this element of the five-part test, the Supreme Court in *HUP* explained,

> Whether or not the portion donated or rendered gratuitously is "substantial" is a determination to be made based on the totality of circumstances surrounding the organization. The word "substantial" does not imply a magical percentage. It must appear from the facts that the organization makes a bona fide effort to service primarily those who cannot afford the usual fee.

507 Pa. at 19 n. 9, 487 A.2d at 1315, n. 9. The Supreme Court most recently applied this element of the *HUP* test in *St. Margaret Seneca Place v. Board*, 536 Pa. 478, 640 A.2d 380 (1994), wherein it found that the nursing home's showing that it bore one-third of the cost of care for half of its residents satisfied that home's burden of proof on this issue.

Judge Shenkin properly applied the same analysis in this case. The evidence indicates that Longwood Gardens bears a hefty percentage of the cost of almost all of its services. It subsidizes more than one-half of the cost of its services for its highest-priced admission, and it bears even greater percentages for all persons ages 18 and under and for all persons who qualify for one of the many other available discounts. Similarly, Longwood subsidizes the entire cost of its

---

5. THE COURT: Excuse me. Before you begin, I want to clarify one matter. In your trial brief, Mr. Weiss, you indicate that you are not contesting that you thought that the evidence would show, and at this point perhaps can concede that the evidence shows, that the property owner advances a charitable purpose.
   MR. WEISS: That is correct.

   THE COURT: And inasmuch as you are conceding, I am not going to require the taxpayer to pursue that issue any more, nor am I going to ask any further questions on that issue. Otherwise I would be doing so.
   MR. WEISS: Okay.
   THE COURT: Okay.
   (Trial transcript at p. 114.)

educational services, except for its continuing education, which it makes available at cost. Longwood Gardens' "services" in these respects consist of access to the public gardens and access to the expertise and experience of its staff and its facilities, all of which it maintains for public benefit at considerable operational expense.

Although the requirement that an institution donate gratuitously a substantial portion of its services does not imply a requirement that Longwood Gardens provide wholly gratuitous services to some of its patrons,[6] Longwood does offer free admission to residents of government nursing homes and virtually free ($1) admission to members of groups sponsored by federally tax-exempt organizations. As Judge Shenkin noted, considering its history of net losses and the likelihood that such losses will continue, Longwood Gardens most certainly does donate and render gratuitously a substantial portion of its services.

**Benefits a Substantial and Indefinite Class of Persons Who are Legitimate Subjects of Charity**

■ The trial court concluded that Longwood Gardens does benefit a substantial and indefinite class of persons who are legitimate subjects of charity because it serves the indefinite public. Adopting our analysis of the common law as set forth in *City of Washington*, Judge Shenkin explained that legitimate subjects of charity are not limited to the destitute; rather this requirement must be examined in the context of the institution's charitable purposes. 666 A.2d at 361. The School District argues that Longwood Gardens does not meet this requirement because it makes no effort to reach out to the poor, incapacitated, distressed, or needy, which it characterizes as the only "legitimate subjects of charity."

Prior precedent reflects that "in order to be considered a purely public charity, an institution must benefit the indefinite public."

*Id.* Exemptions have been sustained on this basis for institutions such as the Library Company of Philadelphia,[7] The Barnes Foundation,[8] Haverford College[9], and Episcopal Academy.[10]

The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this *indefinite* or unrestricted quality that gives it its public character. ....and none the less so because a vast majority of the citizens will certainly never derive any benefit from its use. It is enough that they may do so if they choose. So there is no charity conceivable which will not, in its practical operation, exclude a large part of mankind, and there are few which do not do so in express terms, or by the restrictive force of the description of the persons for whose benefit they are intended.

*Donohugh's Appeal,* 86 Pa. at 313.

In the instant case—more so than in those we have cited—Longwood Gardens is open to the general public, without restriction, 365 days a year, at a greatly subsidized admission price. With respect to its research and educational purposes, Longwood makes its facilities available to degree candidates, interns, and professional gardeners restricted only by the limits of its staff and accommodations. The evidence amply supports Judge Shenkin's determination in this matter.

**Relieves the Government of Some of its Burdens**

■ The trial court found that Longwood Gardens bears a substantial burden that would otherwise fall to the government through its preservation of history, culture, and open space and through its advancement of education and appreciation of horticulture and related areas of interest. The School District contends that Longwood fails to meet this quid pro quo requirement because in exchange for the exemption, Longwood

---

6. *Id.* at 486, 640 A.2d at 384.

7. *Donohugh's Appeal,* 86 Pa. 306 (1878).

8. *The Barnes Foundation v. Keely,* 108 Pa. Superior Ct. 203, 164 A. 117 (1933), *aff'd,* 314 Pa. 112, 171 A. 267 (1934).

9. *Haverford College v. Rhoads,* 6 Pa. Superior Ct. 71 (1897).

10. *Episcopal Academy v. Philadelphia,* 150 Pa. 565, 25 A. 55 (1892).

provides nothing that the government would otherwise have to provide.

We agree with Judge Shenkin's conclusion that Longwood Gardens bears a substantial burden that would otherwise fall to the government in the areas of historic preservation, conservation of wild resources, and provision of open space for public recreation. The General Assembly has declared these services to be in the public interest and has undertaken the obligation to provide these services to its citizens.

The Pennsylvania Constitution declares the Commonwealth to be trustee of our public natural resources to conserve and maintain the people's right to "the preservation of natural, scenic, historic and esthetic values of the environment." Pa. Const. art I, § 27. Pursuant to that constitutional mandate, the legislature enacted the Wild Resource Conservation Act [11] to protect the public's interest by preserving and enhancing the Commonwealth's indigenous, wild plants for the benefit of all its citizens. Similarly, the Recreational Improvement and Rehabilitation Act [12] provides funding for the acquisition of open space resources exemplifying Pennsylvania's cultural heritage and for the acquisition, development, and rehabilitation of public recreation areas and parks. The History Code [13] declares the Commonwealth to be the public's trustee for the preservation of the historic values of the environment; creates the Pennsylvania Historical and Museum Commission to identify and conserve the Commonwealth's architecturally and historically significant sites and structures; and declares it to be in the public interest of the Commonwealth, and its citizens and subdivisions, to engage in comprehensive programs of preservation for the "enjoyment, education and inspiration of all the people." 37 Pa.C.S. § 102.

By providing all of these services, Longwood Gardens relieves the government of part of its burden and advances the government's role in protecting the people's consti-tutionally sanctioned prerogatives. Had Pierre du Pont donated the Longwood property to the local government instead of placing it in trust and providing an endowment, the government would arguably bear the considerable burden of the facility's management and maintenance.

**Operates Entirely Free from Private Profit Motive**

■ The trial court found that Longwood Gardens operates entirely free from private profit motive based on evidence that its trustees serve without compensation, its directors receive reasonable compensation and little in the way of fringe benefits, and the operation consistently operates at a net loss that cannot be attributed to excessive spending on employee salaries and benefits. The School District argues that the evidence proves otherwise, with specific reference to Longwood Gardens' garden shop and restaurant.

We agree with Judge Shenkin's determination because the totality of the evidence leads to the conclusion that at the institutional level Longwood Gardens operates entirely free from private profit motive. The director/chief operating officer in 1994 earned less than $130,000, and the three department heads each earned between $70,000 and $100,000. These management employees pay market-value rents for on-site modest housing and receive no bonuses or other fringe benefits in lieu of compensation. Judge Shenkin found these salaries to be reasonable executive compensation, citing our decision in *School District v. Hamot Medical Center*, 144 Pa.Cmwlth. 668, 602 A.2d 407 (1992), wherein we found executive salaries of $250,000 to $300,000 to be substantial, but not excessive.

■ Whether an organization has a proscribed profit motive may depend on whether it is engaged in a commercial venture in competition with others engaged in similar businesses. *Bower Hill Civic League Appeal v. Board of Property Assessment*, 207 Pa.

---

**11.** Act of June 23, 1982, P.L. 597, *as amended*, 32 P.S. §§ 5301–5314.

**12.** Act of July 2, 1984, P.L. 527, *as amended*, 32 P.S. §§ 5401–5409.

**13.** 37 Pa.C.S. §§ 101–906.

Superior Ct. 122, 215 A.2d 305 (1965). An institution founded and endowed as a purely public charity does not lose its character as such under the tax laws if it receives a revenue from the recipients of its bounty sufficient to keep it in operation; it may not, however, go beyond self-support. *Haverford College; Episcopal Academy.*

The evidence of record indicates that Longwood Gardens is not engaged in a commercial venture in competition with similar businesses. The presence of two potentially profit-making activities, a garden shop and restaurant, does not change the essential nature of Longwood as a whole, as an institution that operates free from private profit motive.[14] Regardless of whether it shows a profit, the garden shop primarily advances and supports the institution's educational purposes through its sale of books and films on horticulture-related topics; in addition, the shop carries items such as film and rain gear for the convenience of visitors to the gardens. Profits from the garden shop are applied against the institution's general operating expenses. The restaurant, operated for the convenience of visitors, maintains limited hours of operation and has never produced a profit.[15]

**PROPERTY TAX EXEMPTIONS UNDER THE GENERAL COUNTY ASSESSMENT LAW**

▮▮ Having concluded that Longwood Gardens is a purely public charity under the five-part *HUP* test, we now address its entitlement to a property tax exemption under the Law. The trial court concluded that Longwood Gardens qualifies for exemption under Section 204(a)(3) of the Law, 72 P.S. § 5020–204(a)(3), as an institution of learning, benevolence, or charity founded, en-

dowed, and maintained by public or private charity, and also under Section 204(a)(6), 72 P.S. § 5020–204(a)(6), as a public park owned and held by trustees for the benefit of the public and used for public purposes without profit. The School District challenges only Longwood's entitlement to exemption as a public park.[16] The School District argues that the public park exemption applies only to publicly owned property or property dedicated to public use and does not apply to privately owned property held for public use.

Section 204(a)(6) of the Law, 72 P.S. § 5020–204(a)(6), exempts "[a]ll public parks when owned and held by trustees for the benefit of the public, and used for amusements, recreation, sports and other public purposes without profit[.]" Clearly, given our analysis above, the Longwood property is owned and held by trustees for the benefit of the public and is used for public purposes without profit. The School District's argument has merit only if "public park" has the limited meaning the School District advances.

▮▮ When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded in pursuing its spirit. 1 Pa.C.S. § 1921. Because the legislature is presumed to have intended to avoid mere surplusage, every word, sentence, and provision of a statute must be given effect. *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963). If "public park" were construed to refer only to publicly held property and property dedicated to public use, the legislature would not have had to add the qualification, "when owned and held by trustees for the benefit of the public." Without any qualifying language, there would be no need for a separate "public park" exemption because public park property would be ex-

---

**14.** The presence of profit-making activities is not determinative of whether a charitable institution operates entirely without private profit motive. A tax-exempt charitable institution may engage in profit-making activities that are separately taxed; similarly, a charitable institution that qualifies for property tax exemption for its charitable activities may have to pay tax on that portion of its property used for profit-making activities that do not advance its charitable purposes.

**15.** As the record indicates that the restaurant is not located on one of the parcels whose tax-exempt status is in question, we do not address whether that portion of the Longwood Gardens property qualifies for exemption.

**16.** Even if we were to agree with the School District that Longwood Gardens is not entitled to exemption as a public park, the trial court's conclusion as to its exemption as an institution of learning, benevolence, and charity would stand unchallenged.

empt under Section 204(a)(7) of the Law, 72 P.S. § 5020–204(a)(7), as public property used for public purposes; the public property exemption does require that the property be both publicly owned and used for a public purpose, *Appeal of Township of Middletown,* 654 A.2d 195 (Pa.Cmwlth.1995).

Our interpretation of the public park exemption is not inconsistent with the case law. As early as 1903, the Pennsylvania Supreme Court recognized that public parks are

> not only the natural place for walks and drives afoot, awheel or with horse and carriage, for boating, skating and other outdoor athletics, but also as the appropriate and most effective location for monuments and statutes, either to historic heroes or to pure art, fountains, flower displays, botanical and zoological gardens, museums of nature and of art, galleries of painting and sculpture, music stands and music halls, and all other agencies of aesthetic enjoyment of eye and ear.

*Laird v. Pittsburg,* 205 Pa. 1, 6, 54 A. 324, 325 (1903). Property may be dedicated for public use and benefit by implication; the purpose may be gathered from the designation given by the owner. *Morrow v. Highland Grove Traction Company,* 219 Pa. 619, 69 A. 41 (1908). In this case, du Pont's having placed the property in trust and established an endowment, in addition to having opened the property to public use, indicate the intention to preserve the ground as a public park. Although the Superior Court in *Johnson v. Delaware County,* 82 Pa. Superior Ct. 285 (1923), denied a tax exemption of property devised to trustees for public recreation, the denial of exemption was based on the fact that no steps had been taken by the trustees to devote the property to the uses for which it was devised.

The public park exemption requires that the property be held for public benefit without profit, and we have already deter-

mined that Longwood Gardens operates free from profit or profit motive. The fact that Longwood charges an admission fee is not dispositive of the property's tax-exempt status any more than it would be if a municipality charged an admission fee to publicly owned facilities. *New Castle v. Lawrence County,* 353 Pa. 175, 44 A.2d 589 (1945); *cf. Haverford College* and *Episcopal Academy.* Exhibit A–15 (submitted to the trial court) indicates that the Commonwealth charges admission to most of the sites under the control of the Pennsylvania Historical and Museum Commission and that all of the municipally owned golf courses listed charge fees. Reasonable regulations for admission of the public do not destroy the charitable nature of the gift or its public benefit. *Barnes Foundation,* 108 Pa. Superior Ct. at 209, 164 A. at 120.

In conclusion, the evidence of record supports Judge Shenkin's findings and conclusion that Longwood Gardens is a purely public charity entitled to exemption from real estate taxes under Section 204(a)(3) and (6) of the Law, 72 P.S. § 5020–204(a)(3) and (6). The order of the trial court is affirmed.

### ORDER

AND NOW, this 21st day of April, 1997, the order of the Court of Common Pleas of Chester County in the above-captioned matter is affirmed.

PELLEGRINI, J., concurs in the result only.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that "Longwood Gardens is a purely public charity entitled to exemption from real estate taxes under Section 204(a)(3) and (6) of the [The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*] ... 72 P.S. § 5020–204(a)(3) and (6)."[1]

---

**1.** Section 204(a)(3) provides:

All ... institutions of learning, benevolence, or charity, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the

same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose ...;

....

As the majority notes, our Pennsylvania Supreme Court in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) stated:

> [A]n entity qualifies as a purely public charity if it possesses the following characteristics.
>
>> (a) Advances a charitable purpose;
>>
>> (b) Donates or renders gratuitously a substantial portion of its services;
>>
>> (c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;
>>
>> (d) Relieves the government of some of its burden; and
>>
>> (e) Operates entirely free from private profit motive.

*Id.* at 22, 487 A.2d at 1317. Longwood Gardens' purpose is laudable, but I do not believe it meets the five-part test to qualify as a purely public charity.[2] Also, I am unpersuaded that Longwood Gardens is entitled to a public park exemption. I would reverse the common pleas court's decision.

SMITH, J., joins in this dissent.

---

(6) All public parks when owned and held by trustees for the benefit of the public, and used for amusements, recreation, sports and other public purposes without profit.

**2.** I agree with the majority that Longwood Garden gratuitously renders a substantial portion of its services.