J-E02006-16

2017 PA Super 27

| | |
|---|---|
| FRANCESCA V. GURECKA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT W. CARROLL AND HOLLY LACEY CARROLL, | |
| Appellants | No. 1301 WDA 2014 |

Appeal from the Order Entered July 11, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 11-024656

BEFORE:    GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E.,
BOWES, J., PANELLA, J., SHOGAN, J., LAZARUS, J., OLSON, J., and OTT, J.

OPINION BY BENDER, P.J.E.:                    **FILED FEBRUARY 3, 2017**

Robert W. Carroll and Holly Lacey Carroll (Appellants or the Carrolls) appeal from the July 11, 2014 order that entered a permanent injunction enjoining them from interfering with the repair and use of a sewer line located on their property that services the nearby residence owned by Francesca V. Gurecka (Appellee or Ms. Gurecka). We affirm.

The trial court set forth the factual background of the case as follows:

> On October 31, 2011, [Appellee], Francesca Gurecka, entered into a written Standard Agreement for the sale of real estate with Rachel French and William Ommert, the purchasers, for the sale price of $390,000.00. The closing date was set for November 30, 2011. On or about November 18, 2011, it was discovered during a municipal dye test that the sewer line servicing the property had a blockage which required repair.

The plumber employed to make the repairs inserted a camera into the sewer line and discovered that the sewer line lateral proceeded to run downhill, under Forest Glen Drive and through the property of [the Carrolls]. The plumber started to perform excavation and repair of the sewer line on the Carroll property when Holly Lacey Carroll instructed the plumber to cease all work and immediately vacate her property.

Common Pleas Court Judge Judith Friedman issued a preliminary injunction on December 2, 2011, authorizing the reasonable repairs of the sewer line pending further litigation and required [Ms.] Gurecka to post a $5,000.00 bond. Due to the future litigation surrounding the sewer line repair, the sales agreement between Francesca Gurecka and Rachel French/William Ommert was terminated.

Francesca Gurecka next sought a permanent injunction seeking to restrict the Carrolls from interfering with the repair or continued use of the sewer line. Francesca Gurecka maintains that she has a right to continued use and maintenance of the sewer due to an easement by implication, or implied easement. This case was assigned to this writer to decide whether a permanent injunction should issue, as a future sewer line blockage coupled with the Carrolls['] refusal to allow maintenance of the line may render the property uninhabitable.

The Carrolls maintain that they have had plans to reposition their driveway from the time of their purchase in March of 2011. The Carrolls further maintain that if the Gurecka line was to remain in the current location, any hopes of redesigning and repositioning their driveway would be impossible. The Carrolls assert that the sewer line encroaches 13 feet into their 107 foot wide lot, rendering 12.15% of their property unusable.

Trial Court Opinion (TCO), 7/11/14, at 1-2.

In response to an order issued by the trial court, the parties submitted a joint stipulation of the undisputed facts, which was then adopted by the trial court. The following pertinent items are contained in the joint statement:

1. [Appellee], Francesca V. Gurecka, is an individual residing at 603 Cherry Blossom Way, Bridgeville, Pennsylvania 15017 and is the Trustee of the Alba N. Valli Irrevocable Trust, title[d] owner of real estate located at 8 Forest Glen Drive, Pittsburgh, Mt. Lebanon, Allegheny County, Pennsylvania 15228 (the "Property").

2. [Appellants], Robert W. Carroll and Holly Lacey Carroll are individuals residing at 13 Forest Glen Drive, Pittsburgh, Mt. Lebanon, Allegheny County, Pennsylvania 15228 ([the Carrolls'] Property.)

3. On October 5, 1936, Orca Geyer ("Geyer") acquired approximately 13 acres in Mt. Lebanon from Beverly Heights Company, by deed dated October 5, 1936, and recorded in the office of the Recorder of Deeds of Allegheny County in Deed Book Volume 2540, Page 204.

4. Geyer thereafter developed Forest Glen, a subdivision, which was proposed in October 1948, and accepted by Mt. Lebanon and recorded January 17, 1949, in Plan Book Volume 44, Pages 17, 18 and 19 (hereinafter "Forest Glen Subdivision"). Forest Glen Subdivision contained 25 lots.

5. The Property is known and referred to as Lot 4 and part of Lot 5 in the Forest Glen Subdivision.

6. [The Carrolls'] Property is known and referred to as Lot 18 in the Forest Glen Subdivision.

7. A right of way for public sewer lines runs behind Lots 12, 13, 14, 15, 16, 17, 18, 19 and 21 in the Forest Glen Subdivision. These lots would be considered to be on the "low side" of Forest Glen Drive.

8. Lots 1, 2, 3, 4, 5 and 6, 7, 8, 9, 10 and 11 are on the opposite side of Forest Glen Drive and therefore on the opposite side of the public right of way. These lots would be considered on the "high side" of Forest Glen Drive.

9. [Ms. Gurecka's] "high side" lot had no direct access to the public sewer therefore, Geyer, as developer, between 1949 and 1956, constructed a sewer line which went through the [the Carrolls'] "low side" lot and connected to the manhole which is in the public right of way.

10. The sewer line at issue which runs through [the Carrolls'] Property is located approximately 13 feet from the boundary line with Lot No. 17.

11. Geyer lived in the Property for a period of time between the 1940s and 1969. Geyer granted and conveyed Lot 18 (the Carrolls' lot) to S. Boyd Challinor and Ruth G. Challinor, by deed dated October 2, 1956, and recorded in the Office of the Recorder of Deeds of Allegheny County in Deed Book Volume 3529, Page 489 (the "Challinor Deed").

12. The Challinor Deed does not contain an express easement for the existing sewer line from the Property through and across the Carrolls' property to the public sewer line.

13. Forest Glen Subdivision does not contain an express easement for the sewer line from [Gurecka's] property through the [Carrolls'] property.

14. Geyer granted and conveyed the [high-side] property to Aris V.C. Valli and Alba N. Valli by deed dated July 28, 1969 and recorded in the Office of the Recorder of Deeds of Allegheny County in Deed Book Volume 4763, Page 249.

15. Aris V.C. Valli died August 26, 1976, thereby vesting full title in fee simple through survivorship in his wife Alba N. Valli. Alba N. Valli thereafter transferred the property in trust naming her daughter Francesca V. Gurecka as Trustee.

16. Challinor conveyed Lot 18 to the [Carrolls] by deed dated March 24, 2011, and recorded in deed book volume 14535 page 310. The Challinor Deed does not contain any reference to the sewer line running through the [Carrolls'] property.

17. There are four visible manholes located on the [Carrolls'] Property; two located at the back of the property across the creek and two located on this side of the creek; one on the bottom left and one to the bottom right (Identified as Manholes #1 and #2 respectively).

18. [Manhole] #1 and [manhole] #2 are located within the sanitary sewer right of way which traverses the [Carrolls'] property.

19. [Ms. Gurecka's] sewer line runs right into public manhole #2 while the [Carrolls'] sewer line doesn't connect to a public

manhole but taps into the public sanitary sewer line which traverses [the Carrolls'] property.

. . .

21. [Ms. Gurecka] discovered the existence of the sewer line during a home inspection in November 2012.

TCO at 3-5.

Based on the stipulated facts, the briefs of the parties and a visit to the subject property, the trial court issued an opinion and order on July 11, 2014, making permanent the preliminary injunction entered on December 2, 2011. Thus, the Carrolls were enjoined from interfering with the repair and continued use and maintenance of the sewer that traversed their property. Following the filing of an appeal by the Carrolls and after oral argument, a panel of this Court reversed the trial court's order. However, after Ms. Gurecka filed an application for reargument *en banc* that was granted on November 16, 2015, this Court heard the matter again and it is now ripe for decision.

In their brief, the Carrolls state the issues they raise as follows:

[1.] Whether the court below committed error of law by holding that there was an implied easement merely because the sewer line in question had been in existence for fifty years although wholly unknown to the [Carrolls] and their predecessor landowners and where [Ms. Gurecka] cannot establish that her property would be rendered uninhabitable as she can readily tap into the public sewer line through an express right of way that is also downhill of her property and also across Forest Glen Road?

[2.] Whether the trial court committed an error of law in determining that the "open and visible" prong of the test for an implied easement was satisfied in the case where the existence of the sewer line was unknown to either of the current property owners, it was wholly undocumented in any deed or plan of

- 5 -

lots[,] and[] had no physical features of its own above visible ground but the [t]rial [c]ourt held that [] fact merely because the municipal sewer main, which is depicted on the Forest Glen Plan of lots, traverses the rear of the [Carrolls'] lot and that the four physical sewer access manhole covers are visible on the [Carrolls'] lot [that] the [Carrolls were] provided legal notice that an individual sewer line serving another property was present approximately parallel to the boundary of an adjacent property?

Appellants' brief at 4.

Initially, we note our standard and scope of review in equity actions:

The trial judge, sitting in equity as a chancellor, is the ultimate fact-finder. The scope of review, therefore, is limited. The final decree will not be disturbed unless the chancellor committed an error of law or abused his or her discretion. The findings of fact made by the trial court will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious.

*Griffith v. Kirsch*, 886 A.2d 249, 253 (Pa. Super. 2005) (quoting *Daddona v. Thorpe*, 749 A.2d 475, 480 (Pa. Super. 2000) (quotation marks and citation omitted)). Moreover, when we review a "trial court's grant of a permanent injunction, pursuant to agreed-upon facts, … we must determine whether the trial court committed an error of law, for which our standard of review is de novo and our scope of review is plenary." *Watts v. Manheim Twp. School Dist.*, 121 A.3d 964, 972 (Pa. 2015) (citing *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002)). Moreover,

[i]n order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law.

*Buffalo Twp.*, 813 A.2d at 663.

Specifically, in relation to the subject of an easement by implication, this Court in *Daddona*, explained that

[i]t has long been held in this Commonwealth that although the language of a granting clause does not contain an express reservation of an easement in favor of the grantor, such an interest may be reserved by implication, and this is so notwithstanding that the easement is not essential for the beneficial use of the property. *See, e.g., Tosh v. Witts*, 381 Pa. 255, 258, 113 A.2d 226 (1955); *Philadelphia Steel Abrasive Co. v. Gedicke Sons*, 343 Pa. 524, 528, 23 A.2d 490 (1942); *Nauman v. Treen Box Co.*, 280 Pa. 97, 100, 124 A. 349 (1924); *Liquid Carbonic Co. v. Wallace*, 219 Pa. 457, 459, 68 A. 1021 (1908); *Kieffer v. Imhoff*, 26 Pa. 438, 443 (1856). *See also* Restatement of Property § 476 (1944); Powell on Real Property § 411 (1975). The circumstances which will give rise to an impliedly reserved easement have been concisely put by Chief Justice Horace Stern speaking for the Court in *Tosh v. Witts*, *supra*:

"Where an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden of the benefit as the case may be, and this is irrespective of whether or not the easement constituted a necessary right of way." *Tosh v. Witts*, *supra*, 381 Pa. at 258, 113 A.2d at 228.

*Daddona*, 749 A.2d at 480 (quoting *Burns Manufacturing v. Boehm*, 356 A.2d 763, 767 (Pa. 1976)).

The *Daddona* case further provided a discussion setting forth the method of analyzing a claim of easement by implication, stating:

Although the [Supreme Court's discussion in *Burns*] conveys a brief summary of the concept of easement by implication, other Pennsylvania cases … provide a much more detailed description of this concept. We find the following statement of the proper

method of analyzing a claim of easement by implication particularly elucidating:

> In deciding whether an easement has been created by implication, the Pennsylvania courts have used two different tests, the traditional test and the Restatement test.
>
> The traditional test has been described as follows: "Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate; *first, a separation of title; second, that, before the separation takes place, the use which gives rise to the easement, shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained.* To these three, another essential element is sometimes added,—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time."
>
> [**Becker v. Rittenhouse**], [297 Pa. 317] at 325, 147 A. [51] at 53 [(Pa. 1929)]. **See also DePietro v. Triano**, 167 Pa. Super. 29, 31-32, 74 A.2d 710 at 710-11 (1950).
>
> The view expressed in the RESTATEMENT OF PROPERTY § 474 [sic] and expressly adopted in Pennsylvania in **Thomas v. Deliere**, 241 Pa. Super. 1, 359 A.2d 398 (1976), "emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties. No single factor under the Restatement approach is dispositive. Thus, the Restatement approach and the more restrictive tests … co-exist in Pennsylvania." **Id.** at 5 n.2, 359 A.2d at 400 n.2. **See also Lerner v. Poulos**, 412 Pa. 388, 194 A.2d 874 (1963); **Schwoyer v. Smith**, 388 Pa. 637, 131 A.2d 385 (1957); **Spaeder v. Tabak**, 170 Pa. Super. 392, 85 A.2d 654 (1952).

**Mann-Hoff** [**v. Boyer**], 604 A.2d [703,] 706-07 [(Pa. Super. 1992)].

*Daddona*, 749 A.2d at 481-82 (emphasis added).

The *Daddona* Court also discussed our Supreme Court's decision in *Bucciarelli v. DeLisa*, 691 A.2d 446 (Pa. 1997), a case in which a mother conveyed a twenty-acre parcel of lakeside land to her son. The mother retained ownership of other lakeside property that she subdivided into four lots. The plan indicated access to the four properties was by way of an existing road that traversed the property the mother had conveyed to her son. The mother then sold the four lots. Subsequently, the son sold the twenty-acre parcel to a neighbor who had lived for ten years across the lake within sight of the subdivision. Neither the mother's deed to the son nor the son's deed to the neighbor indicated that an easement was reserved. After purchase, the neighbor blocked the road, and the owners of the lakeside lots sought injunctive relief against the neighbor.

The trial court held that the neighbor had constructive notice of the easement based on the subdivision plan and the planning commission's records. The trial court also found that the neighbor had actual notice of the right of way on the theory that the recorded subdivision plan created an easement by implication. This Court rejected the lower court's conclusion that the subdivision plan constituted constructive notice of the easement in that the son's land was not part of the subdivision. This Court also concluded that the lower court had not made findings that would support an easement by implication at the time of severance of title when the mother

sold the property to her son. Moreover, this Court concluded that there was insufficient evidence to support the traditional or the Restatement test. Lastly, this Court found insufficient evidence about the use of the easement prior to the sale of the property to the son that would permit an analysis of the factors concerning the creation of the easement by implication.

The **Daddona** opinion then discussed our Supreme Court's decision in **Bucciarelli** that reversed this Court's disposition and reinstated the trial court's order enjoining the neighbor from interfering with the lot owners' use of the road. Pertinent to the issues before us presently, we set forth the following excerpt from the **Daddona** opinion, discussing the **Bucciarelli** decision:

> Our Supreme Court granted allowance of appeal to determine whether an easement by implication was created at the time of severance of title and whether [the neighbor] had actual notice of the existence of the right of way over the property when he purchased it. Answering the second issue first, the high court, while agreeing that the trial court did not specifically find facts to support its conclusion that an easement by implication at severance of title was created, nevertheless held that the trial court had made sufficient factual findings to support its conclusion that [the neighbor] had actual notice of the existence and use of [the road] prior to his purchase of the twenty-acre tract from [the son].
>
> Our Supreme Court found this prior use important to the determination of whether an implied easement was created because:
>
>> The effect of the prior use as a circumstance in implying, upon a severance of possession by conveyance, an easement results from an inference as to the intention of the parties. *To draw such an inference the prior use must have been known to the*

- 10 -

> *parties at the time of the conveyance, or, at least, have been within the possibility of their knowledge at that time. Each party to a conveyance is bound not merely to what he intended, but also to what he might reasonably have foreseen the other party to the conveyance expected. Parties to a conveyance may, therefore, be assumed to intend the continuance of uses known to them which are in considerable degree necessary to the continued usefulness of the land. Also they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation . . . .*

> ***Bucciarelli***, at 436, 691 A.2d at 448 (quoting Restatement of Property, § 476, Comment j). In a footnote, the high court noted that while it "has never specifically adopted Restatement of Property § 476 and we decline to do so now, for § 476 is merely a list of frequently encountered considerations as to whether an easement by implication at severance of title was created. Courts may, nevertheless, find the section useful and persuasive in analyzing cases like this." ***Id.*** at 437 n.1, 691 A.2d at 448 n.1.

***Daddona***, 749 A.2d at 483 (emphasis added).[1]

After explaining the law guiding a court's determination relating to easements by implication, the trial court recognized that it must focus on "the time of severance from the common owner … that [in this case] would

---

[1] We note that this Court's decision in ***Mann-Hoff*** states that the Restatement of Property § 476 was expressly adopted in this Court's ***Thomas*** case. However, in ***Daddona***, we recognized that our Supreme Court refused to adopt the provision in the Restatement as was expressed in footnote 1 of the ***Bucciarelli*** opinion. From these statements, it is obvious that so long as the traditional three-pronged test is met, we need not apply the Restatement, although we may consider the Restatement in analyzing a case before us.

be the conveyance of the Carroll Property from Orca Geyer to [the Challinors] on October 2, 1956." TCO at 7. Specifically recognizing that no express written easement was contained in the deed, the trial court noted that it must apply the three-pronged test, which it did, stating:

> In this writer's opinion, the subject sewer line was installed for the benefit of [Ms. Gurecka's] property at a time when both properties had common ownership. It is further found that the use of the sewer line has been continuous for at least fifty (50) years. Lastly, the array of manholes in the rear of [the Carrolls'] property does place the [Carrolls] on notice of a network of sewer lines coming onto and crossing their property. The subject sewer line runs into manhole #2 (see joint stipulated fact set forth above). Accordingly, this writer finds the subject sewer, and for that matter, the network of sewers in the area of the [Carrolls'] property to be open, visible and permanent.

TCO at 8.

In the case presently before us, it is evident that the deed received by the Challinors, the predecessors-in-title to the property bought by the Carrolls, did not contain an express reservation of a sewer easement. Likewise, the Carrolls' deed from the Challinors did not contain such a reservation. *See* S. Boyd Challinor's Affidavit, 1/10/11 (stating that he and his wife "were not informed, and had no knowledge of a private sewer line from the [h]ouse occupying Lot No. 4"). However, relying on the facts found by the trial court that are supported by the evidence in the record, we conclude that Ms. Gurecka carried her burden of proving that an implied easement was in existence and that the injunction she sought was appropriately entered.

- 12 -

Specifically, in applying the traditional test, we recognize that there is no question that title to the property was severed when the Challinors bought the property now owned by the Carrolls. Additionally, the fact that before the property was sold to the Challinors, the sewer was in existence and was obviously meant to be permanent and necessary to the beneficial enjoyment of Ms. Gurecka's property. Moreover, the use of the sewer was continuous and self-acting; it was not used only from time to time. **See Daddona**, 749 A.2d at 481 (citing **Mann-Hoff**, 604 A.2d at 707).

Thus, the central question is whether the Carrolls' property is subject to an open, visible and permanent easement, *i.e.*, whether the Carrolls had notice of the existence of the sewer line running under their property. The trial court found that they did in that the four manhole covers on the property should have at a minimum alerted them to "the presence of a network of sewer lines." TCO at 7. **See Daddona**, 749 A.2d at 483 (quoting **Bucciarelli**, 691 A.2d at 448) (stating "they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon *reasonably prudent investigation*") (emphasis added). **Cf. Motel 6 v. Pfile**, 718 F.2d 80 (3rd Cir. 1983) (recognizing that the open and visible requirement for an implied easement for sewer lines can exist even if the underground pipes are not "visible" in the literal sense).

As in **Daddona**, where our Supreme Court "held that the trial court had made sufficient factual findings to support its conclusion that [the neighbor] had actual notice of the existence and use of [the road] prior to his purchase of the twenty-acre tract from [the son]," we likewise conclude that sufficient factual findings were made that supported the court's conclusion that the sewer easement was open, visible and permanent.

Accordingly, we conclude that an implied easement had been created and that it is binding as to the Carrolls. Therefore, the trial court did not err in granting the permanent injunction.

Order affirmed.

President Judge Gantman, President Judge Emeritus Ford Elliott and Judges Panella, Shogan, Olson, Ott join this opinion.

Judge Lazarus files a dissenting opinion in which Judge Bowes joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/2017

- 14 -