J-S06044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JANET ROMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| 4020 MECHANICSVILLE ROAD, LLC | : | No. 1843 EDA 2023 |

Appeal from the Judgment Entered June 15, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2020-02186

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JANUARY 10, 2025**

Janet Roman ("Roman"), appeals from the judgment entered against her and in favor of 4020 Mechanicsville Road, LLC ("Appellee"). After careful review, we affirm.

The trial court explained:

> [Roman] is the owner of certain property located at 3981 Grace Avenue, Bensalem[,] PA, (the "Roman property") pursuant to a deed dated October 22, 2008 []. Appellee is the owner of certain property located at 4020 Mechanicsville Road, LLC[] (the "Mechanicsville property") pursuant to a deed dated March 30, 2020 []. The Roman property and the Mechanicsville property share a common boundary on the rear of each lot. A portion of the Mechanicsville property identified as tax parcel number 033-078-002 and the Roman property were previously a single unified property, jointly owned by Anthony B. Roman ("Anthony"), [Roman's] father, and Frances E. Dumas ("Frances"), [Roman's] aunt. Anthony and Frances acquired title to the single unified property from their mother, [Roman's] grandmother, by a deed dated April 9, 1974.
>
> Anthony and his wife, and Frances and her husband, executed separate deeds by which they subdivided the single

unified property into the Roman property [and the Mechanicsville property]. . . . The plan for subdivision of the property (the "subdivision plan"), identifies a driveway running from the Roman property, identified as Lot No. 1, across the Mechanicsville property[,] identified as Lot No. 2, to Mechanicsville Road. The subdivision plan states, "there shall be an easement through [L]ot No. 2 encompassing the existing driveway for the purpose of ingress and egress for [Lot N]o. 1." The subdivision plan was neither signed by the owners of the single unified parcel, nor recorded or approved by any municipality. Further, neither the [] Roman deed nor the [] Dumas deed includes any language indicating the creation of an easement over any portion of the Mechanicsville property for the benefit of the Roman property.

On the same day the [] Roman deed and the [] Dumas deed were executed, the parties to those deeds also executed a licensing agreement (the "licensing agreement"), dated September 8, 1983. Through the licensing agreement, which was signed by both parties and recorded with the Recorder of Deeds, Frances and her husband granted Anthony and his wife a personal, limited license for the use of the historical driveway over a portion of the Mechanicsville property. The licensing agreement granted Anthony such access only during his lifetime. Anthony died on March 20, 2006. [Roman] had knowledge of the terms of the recorded licensing agreement before she became the sole owner of the Roman property in 2008.

Trial Court Opinion, 9/1/23, at 2-3 (record citations omitted, capitalization standardized). Of immediate relevance to this appeal, the trial court stated:

Though [Roman] moved into the Roman property in 2014, no one had resided at the property since [Roman's] grandmother's death in 1978. The Roman property has access to Grace Avenue by a paved driveway and is therefore not landlocked. [Roman] has not accessed the Roman property by the claimed easement over the Mechanicsville property, instead accessing the property by way of the paved driveway connection to Grace Avenue. In addition, access to the unpaved driveway was blocked by a chain several times throughout the years. Furthermore, Appellee had no actual notice that anyone asserted easement rights over the Mechanicsville property until he was served with the complaint in this matter. Appellee acted in good faith in purchasing the Mechanicsville property. [Roman] had knowledge that the

Mechanicsville property had been listed for sale in November 2019, yet did not file her complaint to quiet title thereby commencing this action until May 4, 2020.

*Id*. at 3-4 (record citations omitted, capitalization altered).

Following the May 2020 filing of the complaint, and subsequent motion practice, the trial court held a bench trial in November 2022. In February 2023, the court issued a verdict in favor of Appellee and against Roman. The trial court held Roman

failed to meet the burden of proof necessary to prove the existence of the claimed easement and that Appellee was a *bona fide* purchaser who took title to the property in good faith without notice of [Roman's] claim. The [trial c]ourt further found that the doctrine of *laches* is applicable here, where [Roman] knew the property was being sold yet took no steps to alert the Appellee of her claim until filing this action.

*Id*. at 4-5 (italics added). Roman filed post-trial motions, which the trial court denied. This timely appeal followed.[1]

Roman present five issues for our review:

a) Did the trial court abuse its discretion and/or err as matter of law in deciding that [Roman] did not meet her burden of proving an easement by implication by reference to an unrecorded plan?

b) Alternatively, did the trial court abuse its discretion and/or err as matter of law in deciding that Roman did not meet her burden of proving an easement by implication upon severance of title?

c) To the extent relied upon by the trial court in deciding that Roman did not satisfy her burden of proof, did the trial court abuse its discretion and/or err as a matter of law in finding that a certain recorded license agreement either extinguished or created an abandonment of the claimed easement by implication?

_____

[1] Roman and the trial court complied with Pa.R.A.P. 1925.

d) Did the trial court abuse its discretion and/or err as matter of law in finding that, notwithstanding its inapplicability to the establishment and existence of easements by implication, Appellee [] was a *bona fide* purchaser for value given its constructive knowledge of, but admitted failure to further inquire as to, the implied easement for the benefit of Roman's property?

e) For the same reasons that the trial court committed reversible error in re deciding that [Appellee] was a *bona fide* purchaser for value given its constructive knowledge of, and lack of further inquiry regarding, the implied easement for the benefit of Roman's property, did the trial court abuse its discretion and/or err as a matter of law in deciding that Roman's claim to an easement by implication was barred by the doctrine of *laches*?

Roman's Brief at 3 (capitalization standardized).

We begin by recognizing:

Our appellate role in cases arising from non-jury [matters] is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

***Metro Real Estate Investment, LLC v. Bembry***, 207 A.3d 336, 339 (Pa. Super. 2019) (citations omitted). The "credibility of witnesses is an issue to be determined by the trier of fact. On appeal, this Court will not revisit the trial court's determinations regarding the credibility of the parties." ***Garwood v. Ameriprise Financial, Inc.***, 240 A.3d 945, 948 (Pa. Super. 2020) (citation omitted).

- 4 -

With respect to easements by implication, this Court has stated:

An easement by reference to a map or plat[ ] is . . . an easement by implication . . ..  [W]e look to the following well established principles concerning an easement by reference to a map or plat[]:

It is well settled that the grantee of a lot, which is sold according to a plan of lots on which streets or alleys not previously opened or projected as a public street are plotted out by the grantor, acquires an easement over those streets and alleys as a private right of property arising out of the grant, of which he cannot be deprived without compensation[.]

***Cox's Inc. v. Snodgrass***, 92 A.2d 540, 541 ([Pa.] 1952). ***References to a plan contained in deeds make the plan a part of the deed*** or conveyance and constitute a dedication of the streets, alleys[,] and ways shown on the plan, to the use of the purchasers as public ways[.]  . . .  Where a street called for a boundary in a deed is not a highway nor dedicated to public use, the grantee does not take title in fee to the center of it, but by implication acquires an easement, or right of way, over the lands. There is in such a case, an implied covenant that there is a way corresponding with the one described in the deed, that so far as the grantor is concerned it shall be continued and that the grantee, his heirs and assigns, shall have the benefit of it.

***Potis v. Coon***, 496 A.2d 1188, 1191-93 (Pa. Super. 1985) (some citations and quotation marks omitted).

To establish an easement by implication upon severance of title, a party must establish: (1) a separation of title; (2) prior to the separation, the use giving rise to the easement was "so long continued, and so obvious or manifest, as to show that it was meant to be permanent"; (3) the easement is "necessary to the beneficial enjoyment of the land granted or retained[;]" and (4) "the servitude shall be continuous and self-acting, as distinguished

from discontinuous and used only from time to time." ***Gurecka v. Carroll***, 155 A.3d 1071, 1076 (Pa. Super. 2017) (*en banc*) (citations omitted) (emphasis removed). This test coexists in Pennsylvania with the test enunciated in Section 474 of the Restatement of Property, which "emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties. No single factor under the Restatement approach is dispositive." ***Id***. (citation omitted). We presume parties to a conveyance expect and intend knowable and reasonably foreseeable prior uses of the land to continue after the conveyance. ***See Bucciarelli v. DeLisa***, 691 A.2d 446, 448 (Pa. 1997).

In her first issue, Roman argues the trial court erred in finding she did not prove there was an easement by implication "by reference to an unrecorded plan." Roman's Brief at 15. Specifically, she maintains "the legal description in the deeds for the Roman and Dumas properties reference the unrecorded subdivision plan which states, "there shall be an easement thru Lot No. 2 encompassing the existing driveway for the purpose of ingress and egress for Lot No. 1." ***Id***. at 15-17; Subdivision Plan, 5/17/83, Note (unnecessary capitalization omitted). Thus, Roman avers the deeds' references to the subdivision plan "created an easement by implication with respect to the [h]istorical [d]riveway[.]" Roman's Brief at 17.

The trial court disagreed, stating:

> An easement by implication may be found by reference to a map or plat[]. [***See***] ***Potis***, 496 A.2d at 1191[.] . . .

- 6 -

* * * * *

Historically, cases in which an implied easement by reference to a map was found involve the dedication of streets and walkways to public uses in major subdivisions. [*See*] *Potis*, 496 A.2d at 1191 (road in a 20+ lot subdivision); *Reed v. Reese*, 374 A.2d 665 (Pa. 1977) (park and walkways in 14-lot block of 6-block subdivision); *Cunningham v. Cronin*, 206 A.3d 569, 571 (Pa. Super 2019) (road in a 28-lot subdivision). An implied easement by reference to a map, as with all implied easements, must be proved through clear proof. *See Stein* [*v. Bell Telephone Co. of Pennsylvania*,] 151 A. [690,] 692 [(Pa. 1930)].

In the present case, the subdivision of the property that resulted in the Roman property and the relevant portion of the Mechanicsville property did not include any streets, alleys, or common elements that could be dedicated. The subdivision created only two parcels, and the driveway at issue was not dedicated to a public use. Further, the subdivision plan was not plotted out by the grantor, as required by *Potis*. [*See*] *Potis*, 496 A.2d at 1192. The subdivision plan was neither created by Frances nor signed by her. Moreover, there is no evidence that Frances intended for her lot to be perpetually burdened by an easement in favor of Anthony.

Trial Court Opinion, 9/1/23, at 7-8 (citation formats and capitalization standardized).

We have thoroughly reviewed the record and relevant case law and discern neither an abuse of discretion nor error of law by the trial court. Initially, Roman's reliance on *Starling v. Lake Meade Property Owners Association, Inc.*, 162 A.3d 327 (Pa. 2017), is misplaced. *See* Roman's Brief, at 15. *Starling* is not an easement case and does not contain any mention, let alone discussion, of easements by implication. *See id*. at 340-48. Rather, *Starling* concerned a dispute between a homeowner and a

homeowner's association about the ownership of an undeveloped strip of land abutting the homeowner's property. ***See id***. at 329-35. While the ***Starling*** Court ultimately relied on a subdivision plan to resolve the ownership dispute, it did so because the homeowner's deed did not contain a narrative metes and boundaries description and therefore contained "less information than is necessary to define with certainty the property in question." ***Id***. at 346. Here, by contrast, the homeowners' deeds contain narrative metes and boundaries descriptions. ***See*** Roman Deed, 9/8/83, at 1; Dumas Deed, 9/8/83, at 1.

Moreover, although the 1983 transaction and the subdivision plan in the instant case arguably meets the legal definitions of subdivision and subdivision map, ***see*** Black's Law Dictionary, 746 (5th Pocket ed. 1996), they do not fit within the ambit of ***Reed***, ***Potis***, and ***Cunningham***, which concern multiple subdivisions and contain more explicit language than in this case about the use of property identified in a subdivision plan.

***Reed*** concerned a fourteen-lot subdivision, and whether green-space labeled as a park on the subdivision map could be converted to other use or if the lot owners had an easement over the park. ***See Reed***, 374 A.2d at 666-67. The ***Reed*** Court stated, "a ***sale*** of land ***and*** a conveyance by deed making reference to an unrecorded plan which plan ***includes streets or parks*** is sufficient to create an enforced interest, or private right of use, mainly an easement, in the buyer[.]" ***Id***, at 669 (emphases added).

*Potis* involved a subdivision with over twenty lots where a re-subdivision plan approved by the township would have eliminated a road which was part of the original subdivision map. *See Potis*, 496 A.2d at 1191. The *Potis* court confirmed "the grantee of a lot, which is *sold* according to *a plan of lots on which streets or alleys not previously opened or projected as a public street* are plotted out by the grantor, acquires an easement over those streets and alleys[.]" *Id*. at 1192 (emphases added).

Lastly, the subdivision in *Cunningham* consisted of twenty-eight lots, and *the deed referenced a plan which included a private road, an alley, and a greenway*. *See Cunningham*, 206 A.3d at 571. The dispute concerned whether residents of the subdivision acquired an easement by implication over the alley and greenway another resident acquired them via a tax sale and to which he blocked access. *See id*. Relying on *Potis*, *supra*, this Court held the other deedholders acquired an easement by implication. *Id*. at 573.

Roman argues that the 1983 transaction and the 1983 subdivision plan created an easement. However, the 1983 transaction was not a "sale of land." *Reed*, 374 A.2d at 669; *see also Potis*, 496 A.2d at 1191. Rather, Anthony and Frances jointly inherited a single piece of property, which they proceeded to split in half. *See* Trial Court Opinion, 9/1/23, at 2-3; Joint Stipulation of Fact for Trial, 11/10/22, at 1-2. Moreover, the subdivision "plan" is neither an "unrecorded plan which plan *includes streets or parks*," nor "*a plan of*

***lots on which streets or alleys not previously opened or projected as
a public street*** are plotted out[.]" ***Reed***, 374 A.2d at 669; ***Potis***, 496 A.2d
at 1191. Rather the "plan" is a drawing of the property with a line dividing it
in half and an unlabeled dotted line between the properties, presumably
meant to indicate the historical driveway. ***See*** Subdivision Plan, 5/17/83.
There are no roads, alleys, parks, or greenways within the properties plotted
out on the "plan." ***See id***. Thus, we agree with the trial court that this case
is distinguishable from ***Reed***, ***Potis***, and ***Cunningham***. Moreover, Roman
has not pointed to any cases where this Court or our Supreme Court has found
an implied easement on similar facts. Roman's first issue does not merit relief.

In her second issue, Roman contends the trial court erred in not finding
an easement by implication "upon severance of title." Roman's Brief at 18.
Roman maintains the record and trial testimony established "there had been
such continuous and obvious use[] of the [h]istorical [d]riveway before its
separation to show an intention to make the use of the [h]istorical [d]riveway
permanent." ***Id***. at 19.

The trial court found:

> Here, the driveway in dispute is not reasonably necessary
> for the continued usefulness of the Roman property. [Roman] has
> not used the disputed driveway. Rather, [Roman] has exclusively
> used the paved driveway which gives her direct access to Grace
> Avenue. In addition, the disputed driveway was blocked by a
> chain several times throughout the years. The intent of [Anthony
> and Frances] further establishes that an implied easement upon
> severance of title does not exist. The parties did not intend to
> create an easement, they intended to create a personal and
> limited license through the licensing agreement for Anthony's use

of the driveway during his lifetime. The intent of those parties is clear, as is the fact that the disputed driveway is in no way necessary for the continued use of the Roman property. [Roman] did not convince the [trial c]ourt of the existence of an implied easement upon severance of title.

Trial Court Opinion, 9/1/23, at 9 (capitalization standardized).

After a thorough review of the certified record, we discern no error in the trial court's reasoning. Applying the four-part test enunciated in **Gurecka**, **supra**, we note there was a separation of title in 1983. **See** Joint Stipulation of Facts for Trial, 11/10/22, at 1-2. The trial court found the Roman property was vacant between 1978 and 2014. **See** Trial Court Opinion, 9/1/23, at 3. Roman does not dispute this finding. **See** Roman's Brief, at 18-19. Despite this, Roman testified she and members of her family regularly used the historical driveway. **See** N.T., 11/21/22, at 52-55. However, the trial court did not credit this testimony, instead crediting Appellee's evidence that Roman did not use the historical driveway, which was so overgrown as to be unusable, and had been blocked by a chain at various points, and that Roman used the paved driveway onto Grace Avenue. **See id**. at 76-81; 88-89; Trial Court Opinion, 9/1/23, at 3-5, 18-19. We have no basis to overturn these factual and credibility findings. **See Garwood**, 240 A.3d at 948; **Metro Real Estate Investment, LLC**, 207 A.3d at 339. Moreover, the record is clear Roman does not need the historical driveway to access her property and rarely used it. **See** Subdivision Plan, 5/17/83. Thus, Roman failed to prove an easement

by implication upon severance of title. ***See Gurecka***, 155 A.3d at 1076.

Roman's second issue does not merit relief.

In her third issue, Roman argues the trial court erred in relying upon

the licensing agreement to extinguish an easement on the historical driveway.

***See*** Roman's Brief at 20-22. Roman avers, "[e]ven if presumptively valid. . .

the [l]icens[ing] [a]greement does not purport to extinguish any easement

rights in the [h]istorical [d]riveway and, aside from any such language in it,

its creation in and of itself as a matter [of] law would not have operated as

any extinguishment of any such rights." ***Id***. at 20.

> The trial court stated:
>
> This [c]ourt did not find that the licensing agreement either extinguished or created an abandonment of the historical driveway because the [trial c]ourt did not find that the claimed easement as to the historical driveway existed. [Roman] is mistaken in the assertion that the [trial c]ourt found the claimed easement existed. Rather, the [trial c]ourt found that any rights to the driveway belonged to Anthony . . . and pursuant to the terms of the licensing agreement, those rights terminated upon Anthony's death in 2006.

Trial Court Opinion, 9/1/23, at 9 (capitalization standardized).

We discern no error in the trial court's finding. Black's Law Dictionary

defines an easement as "[a]n interest in land owned by another person

consisting of the right to use or control the land, or an area above it or below

it, for a specific, limited purpose[.]" Black's Law Dictionary, 285 (5th Pocket

ed. 1996). Here, the property was owned by a single owner until Anthony

and Frances split the property in two on September 8, 1983. ***See*** Trial Court

Opinion, 9/1/23, at 2-3; Joint Stipulation of Fact for Trial, 11/10/22, at 1-2. Anthony and Franes executed the licensing agreement the same day. *See id*.; *see also* Licensing Agreement, 9/8/83, at 5. The only evidence which supports Roman's contention regarding an easement is the note on the subdivision plan. However, the subdivision plan is dated May 1983, almost four months *before* the property was divided and thus, did not create an easement on that date. Moreover, the subdivision plan is neither signed nor notarized and there is no evidence of record regarding who wrote the note on the subdivision plan or that it represented the intent of the parties.

While Roman relies on *Starling*, *supra* for the proposition that the subdivision plan is an essential part of the deed, as discussed above, this reliance is misplaced. *See* Roman's Brief at 21-22; *Starling*, 162 A.3d at 341, 346. *Starling* is not an easement case, and only relied upon a subdivision plan because the deed was ambiguous. *See id*. No such ambiguity existed here.

Roman does not point to a basis in law for finding a random note on a map of the property is sufficient to create an easement, when a contemporaneous signed, notarized licensing agreement, memorialized the intention of the property owners *not* to create such an easement. Roman's third issue does not merit relief.

Because we agree with the trial court that Roman has not demonstrated the existence of an easement, we need not address her fourth and fifth claims

that the trial court erred in finding Appellee was a *bona fide* purchaser and in applying the doctrine of *laches*. Accordingly, for the reasons set forth above, we affirm.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/10/2025